JANICKI LOGGING CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–453C.

United States Court of Federal Claims.

July 31, 1996.

defendant's motion to dismiss the contract claim based on the statute of limitations but not based on issue preclusion. With respect to plaintiff's takings claim, defendant's motion to dismiss is granted and plaintiff's cross-motion for summary judgment is denied.

William F. Lenihan, Seattle, Washington, for plaintiff. Andrew R. Gala, of counsel.

Jennifer M. Hong, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Richard E. Rice, Assistant Director, Washington, D.C., for defendant.

*OPINION*

ANDEWELT, Judge.

### I.

In this government contract action, plaintiff, Janicki Logging Co., Inc., seeks to recover damages it incurred under a contract it entered into with the United States Department of Agriculture Forest Service (the Forest Service) for the removal of timber within the Mount Baker–Snoqualmie National Forest in Washington State. The dispute involves the contracting officer's unilateral decision, after the parties had entered into the contract, to delete from the scope of the contract an area denoted in the contract as Unit 1. The reason for this deletion was that a northern spotted owl nest was discovered within that area. In its complaint, plaintiff sets forth two alternative theories for recovery—breach of contract and a taking of plaintiff's property in violation of the Fifth Amendment to the Constitution. This action is before the court on defendant's motion to dismiss both claims under RCFC 12(b)(1) for lack of jurisdiction or, alternatively, under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted, and on plaintiff's cross-motion for summary judgment.

Defendant seeks dismissal of plaintiff's contract claim under the doctrine of issue preclusion or, alternatively, as barred by the applicable statute of limitations. For the reasons set forth below, the court grants

### II.

In *Acacia Villa v. United States*, 24 Cl.Ct. 445, 448–49 (1991), this court described the doctrine of issue preclusion as follows:

"Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed.Cir.1984), *citing Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). The doctrine derives from the general principle that "the same person may demand a judicial determination of the same issue only once." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[1] [ (2d ed. 1983) ]. The doctrine of issue preclusion is not mandated in the Constitution or by statute. Rather, it is the product of court precedent based on a court's exercise of its equitable powers. The Supreme Court described the derivation and purpose of collateral estoppel as follows:

Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel ... serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

*United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (citations omitted), *quoting Allen v.*

*McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

The decision upon which defendant bases its claim of issue preclusion is this court's dismissal, prior to plaintiff's filing of the instant complaint, of a complaint filed in this court by plaintiff on January 21, 1992 (the 1992 complaint). The 1992 complaint raised the same contract and takings claims as those presented in the instant complaint. In a November 23, 1992, opinion, this court dismissed plaintiff's contract claim as barred by the statute of limitations and, alternatively, as barred by 28 U.S.C. § 1500 because plaintiff had brought suit two months earlier in district court against the contracting officer and the Chief of the Forest Service. *See Janicki Logging Co. v. United States*, No. 92–45C (Ct.Fed.Cl. Nov. 23, 1992). Section 1500, in certain circumstances, prohibits the filing of a monetary action in this court when a monetary action is pending in district court against the United States on the same operative facts. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed.Cir.1994) (en banc); *cf. Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).[1] The court dismissed the takings claim on the ground that all rights and remedies between the parties pertaining to the subject matter of the contract should be governed by contract principles rather than constitutional takings principles.

Plaintiff appealed the dismissal of both its contract and takings claims. After the Supreme Court issued its opinion in *Keene*, in which the Court analyzed the scope of Section 1500, defendant asked the Court of Appeals for the Federal Circuit to affirm summarily this court's dismissal of plaintiff's 1992 complaint. Plaintiff did not object and the Federal Circuit summarily affirmed. *See Janicki Logging Co. v. United States*, 9 F.3d 978 (Fed.Cir.1993) (mem.). That affirmance rested exclusively on Section 1500 and did not address the statute of limitations or any other pertinent issues.

### III.

Section 1500 does not bar the instant complaint because at the time plaintiff filed this complaint, no analogous district court action was pending. Defendant argues, however, that the doctrine of issue preclusion requires this court to give preclusive effect to the alternative grounds to Section 1500 upon which this court relied in its November 23, 1992, opinion—the statute of limitations and the appropriateness of resolving the case on contract rather than takings principles. Hence, defendant interprets the doctrine of issue preclusion as reaching a trial court's resolution of issues that were contested on appeal in the prior litigation but upon which the appellate court did not rely or rule.

■ Defendant's interpretation misunderstands the scope of the doctrine of issue preclusion. "When a judgment is based upon alternative grounds or multiple grounds, and on appeal it is affirmed on only one ground, without reaching the others, only the issue reached on appeal is a basis for collateral estoppel." 1B James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 0.443[5.–2], at III–594 (2d ed. 1995 rev.) (citing *Arab African Int'l Bank v. Epstein*, 958 F.2d 532 (3d Cir.1992)); *see also Synanon Church v. United States*, 820 F.2d 421, 424–25 (D.C.Cir.1987); *Stebbins v. Keystone Ins. Co.*, 481 F.2d 501, 507 n. 13 (D.C.Cir. 1973); Restatement (Second) of Judgments § 27 cmt. *o* (1980); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4432 (1981) ("If the appellate court terminates the case by final rulings as to some matters that leave it unnecessary to resolve other matters, preclusion is limited to the matters actually resolved by the appellate court."). This approach to issue preclusion makes eminent sense. Our legal system generally allows litigants the opportunity to secure appellate review of adverse trial court judgments. Defendant's approach would undermine this right by binding a litigant to a trial court's determination of an issue on which the liti-

---

1. 28 U.S.C. § 1500 provides:

   The United States Court of Federal Claims shall not have jurisdiction of any claim for ... which the plaintiff ... has pending in any other court any suit or process against the United States or any person who ... was ... acting or professing to act, directly or indirectly under the authority of the United States.

gant did not have an opportunity to secure appellate resolution.

■ In describing the requirements for issue preclusion in *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983), the Federal Circuit, although using somewhat different wording, adopted essentially the same approach as the above-cited authorities. The Federal Circuit listed the requirements as follows:

> (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action.

A determination would be "necessary and essential to the resulting judgment" only if the highest appellate court that addressed the merits rested its judgment on that determination. Herein, the trial court's determinations with respect to the statute of limitations and the viability of a Fifth Amendment takings claim were not "necessary and essential to the resulting judgment" because the Federal Circuit rested its judgment on Section 1500 alone. Hence, issue preclusion does not apply and defendant's motion to dismiss the contract claim based on issue preclusion is denied.

### IV.

The statute of limitations applicable to plaintiff's contract claim is contained in 41 U.S.C. § 609(a)(3), which provides that a direct action by a government contractor in this court "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." On January 8, 1991, the contracting officer issued his final decision on plaintiff's claim for damages resulting from the deletion of Unit 1 from the scope of the contract. Therein, the contracting officer specifically notified plaintiff that plaintiff had 12 months from the date it

received the decision to bring a direct action in this court challenging that decision.[2]

Plaintiff thereafter filed three actions challenging the Forest Service's conclusions. Although plaintiff filed its first action on November 18, 1991, within the 12-month statute of limitations period, plaintiff filed in district court rather than the Court of Federal Claims. That suit did not name the United States as a defendant but rather named those government employees who had participated in the deletion of Unit 1 from the scope of the contract. Plaintiff brought the suit against these employees both in their individual capacities and in their capacities as government employees. Plaintiff filed its second suit, referred to above as the 1992 complaint, in this court on January 21, 1992, shortly after the 12-month statutory period had expired. This court dismissed that action on November 23, 1992, and the Federal Circuit affirmed that dismissal on August 20, 1993. On June 24, 1993, after this court's dismissal of plaintiff's second suit, the district court dismissed plaintiff's first suit against the government employees. The Court of Appeals for the Ninth Circuit affirmed that dismissal on December 13, 1994. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561 (9th Cir.1994). Plaintiff filed its third action, the instant action, on July 12, 1995, seven months after the Ninth Circuit affirmed the district court's dismissal of plaintiff's first action.

### V.

■ Plaintiff does not dispute that it failed to file an action in this court within 12 months of its receipt of the contracting officer's January 8, 1991, decision. Plaintiff contends, however, that the instant complaint should be held timely filed because pursuant to the doctrine of equitable tolling, the 12-month statute of limitations in Section 609(a)(3) was tolled as of November 18, 1991, the date on which plaintiff filed its district court action.

Defendant responds that the 12-month period in Section 609(a)(3) is not subject to the doctrine of equitable tolling. Defendant ar-

---

2. In its complaint, plaintiff alleges that it received the contracting officer's decision "[o]n or

about January 8, 1991."

gues that the wording of the statute is unambiguous ("shall be filed within twelve months") and that Congress intended thereby to create an absolute bar against the filing of an action in this court after the expiration of the 12–month period. To support this position, defendant cites *Gregory Lumber Co. v. United States,* 229 Ct.Cl. 762, 763, 1982 WL 25950 (1982), which relies upon the Supreme Court's discussion of equitable tolling in *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

■ The defect in defendant's argument is that it ignores a decision issued after *Gregory Lumber* in which the Supreme Court modified its prior interpretation of equitable tolling as articulated in *Soriano. See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94–95, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *id.* at 98–100, 111 S.Ct. at 459–60 (White, J., concurring in part and concurring in the judgment). In *Irwin,* the Court noted the inconsistency in its prior decisions concerning equitable tolling, including *Soriano,* and adopted a new general rule. *Id.* at 94–95, 111 S.Ct. at 456–57. The Court rejected the contention that the doctrine of sovereign immunity requires courts to employ an approach to equitable tolling in suits against the federal government different from that used in private suits. The Court concluded that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96, 111 S.Ct. at 457. The Court reasoned that a presumption in favor of the availability of equitable tolling is "likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." *Id.* at 95, 111 S.Ct. at 457. Hence, for equitable tolling not to apply to a statute of

limitations, there must be an indication that Congress so intended. *See Raspberry v. Secretary of HHS,* 32 Fed.Cl. 777, 779 (1995).

Defendant does not cite any legislative history that suggests that Congress did not intend equitable tolling to apply to the 12–month statute of limitations in Section 609(a)(3). Rather, in addition to *Soriano*-based *Gregory Lumber* and cases that rely upon *Gregory Lumber,* defendant relies primarily upon the mandatory nature of the wording of the statute. In *Irwin,* however, the Supreme Court concluded that even statutory wording as definitive as "every claim ... shall be barred unless the petition ... is filed ... within six years" is not sufficient to overcome the presumption that equitable tolling applies. 498 U.S. at 94–95, 111 S.Ct. at 456–57.[3] In addition, it follows from *Irwin* that the presumption that equitable tolling applies is not overcome by the fact that a statute of limitations, such as the 12–month period in Section 609(a)(3), commences to run upon a date that can easily be determined with some degree of certainty, *i.e.,* upon receipt of a final agency decision. The statute of limitations construed in *Irwin,* like that contained in Section 609(a)(3), began to run on a date that was easily determined.[4]

## VI.

■ In any event, this court need not resolve definitively whether the statutory time limit in Section 609(a)(3) is subject to equitable tolling because even if it were, equitable tolling would not aid plaintiff. In *Irwin,* the Supreme Court explained:

Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading

---

**3.** In addition to the wording of Section 609(a)(3), defendant relies upon the wording of Section 605(b) which states: "The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum ... unless an appeal or suit is timely commenced as authorized by this chapter." But this provision, in effect, simply refers to and does not change the time limit established in Section 609(a)(3). Hence, Section 609(a)(3) is controlling and the wording therein is not materially different from the wording of the statute in *Irwin.*

**4.** The statute in *Irwin* provided:

Within thirty days of receipt of notice of final action taken by ... the Equal Employment Opportunity Commission ..., an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on this complaint, may file a civil action....

42 U.S.C. § 2000e–16(c) (1988). (In 1991, the 30–day period was increased to 90 days.)

during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

498 U.S. at 96, 111 S.Ct. at 457–58 (footnotes omitted).

This case does not fit squarely within the precedent cited in *Irwin*, which allowed equitable tolling when a plaintiff filed a timely but defective complaint. *See Burnett v. New York Central R.R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Herein, the contracting officer informed plaintiff in writing prior to plaintiff filing its district court complaint that this court was the correct court in which to bring suit. Because plaintiff ignored the unequivocal instructions in the contracting officer's final decision, plaintiff's filing in the wrong court could not reasonably be classified as an "exercise of due diligence aimed at preserving [its] legal rights." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458.

Notice aside, there is another fatal flaw in plaintiff's equitable tolling argument. To the extent this court were to conclude that plaintiff's filing of its district court action was sufficient to toll the statute of limitations, the period of equitable tolling necessarily ended when the district court action was dismissed and no longer pending. At that point in time, plaintiff should have understood that this court, rather than the district court, possessed the requisite jurisdiction to consider plaintiff's claim and that Section 1500 no longer barred the filing of a complaint in this court. But rather than acting with due diligence and expeditiously filing a new complaint in this court, plaintiff waited seven months after the Ninth Circuit affirmed the dismissal of plaintiff's district court action before filing the instant complaint.

Plaintiff argues that its delay in filing in this court was necessary for plaintiff to evaluate its legal options. But this argument is not credible. Plaintiff's 1992 complaint raised essentially the same claims as those presented herein and upon dismissal of its district court action, plaintiff should have been able to resolve fairly quickly any open legal or factual issues and determine whether to refile in this court. Plaintiff waited seven months after the Ninth Circuit's decision before filing a new complaint in this court whereas the plaintiffs in the cases relied upon in *Irwin* cured their defective complaints by filing new complaints within a matter of days after their first complaints were held defective. *See Burnett*, 380 U.S. at 436, 85 S.Ct. at 1058–59 (plaintiff filed a district court action eight days after the state court dismissed its action based on improper venue); *American Pipe*, 414 U.S. at 561, 94 S.Ct. at 770 (an individual class member filed his own suit eight days after the court denied class certification). Plaintiff's seven-month delay was unreasonable and is fundamentally inconsistent with a conclusion that plaintiff actively pursued its legal remedies. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir.1990) (a plaintiff may invoke equitable tolling if he files suit "within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information"), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

In this regard, statutes of limitations are intended, *inter alia*, to avoid stale claims. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975). Therefore, to present a compelling equitable argument that the statute of limitations should be tolled to permit a curative complaint to be filed outside the statutory period, a litigant would have to demonstrate that it avoided unnecessary staleness of its claim by filing a corrective complaint reasonably expeditiously after the previously filed complaint was held defective. *See Cada*, 920 F.2d at 453. A possible alternative to this approach in applying the doctrine of equitable tolling is to view the filing of a complaint in the wrong court as stopping the running of the statute of limitations and then, after the original complaint is held defective, allow the litigant the amount of time remaining, if any, in the statutory

period in which to file a proper complaint. *See United States v. Ibarra*, 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 5 n. 2, 116 L.Ed.2d 1 (1991). (For example, if a litigant filed a defective complaint 30 days before the statutory period expired, the litigant would have 30 days after that complaint is held defective within which to file a proper complaint in the correct court.) Even under this latter interpretation, however, plaintiff could not prevail. If the 12–month statute of limitations began to run on January 8, 1991, then at the time plaintiff filed its district court complaint on November 18, 1991, 51 days remained in the statutory period. As noted above, the Section 1500 bar against filing in this court and any reason for equitable tolling ended with the final disposition of the district court action. The remaining 51–day period, therefore, began to run upon such final disposition and from that date, plaintiff had 51 days within which to file a proper complaint in this court. But plaintiff did not file the instant complaint until seven months after the Ninth Circuit's affirmance of the district court's dismissal, which is well beyond any such extended period.[5] Therefore, defendant's motion to dismiss the contract claim based on the statute of limitations is granted.

## VII.

■   Plaintiff presents the alternative argument that even if its action contesting the contracting officer's January 8, 1991, decision is untimely, plaintiff presented a new claim to the contracting officer concerning the deletion of Unit 1 from the scope of the contract in a November 4, 1991, letter, and that a suit based on that new claim would not be barred by the statute of limitations. Plaintiff's contention, however, is inconsistent with plaintiff's representations in its November 4, 1991, letter.

The November 4 letter presented damage estimates for the deletion of Unit 1 that differ from the estimates plaintiff previously presented to the contracting officer. The new estimates were based on a greater quantity of timber on Unit 1 and a higher value

per unit of timber than plaintiff previously had alleged. Contrary to plaintiff's present contention, however, plaintiff did not present the letter as containing a new claim under 41 U.S.C. § 605 but rather as containing revised information with respect to plaintiff's earlier claim. The letter was entitled *"Revised Claim for Damages"* (emphasis added) and stated, in pertinent part:

This letter and accompanying data is a *revision* to the claim of February 2, 1990, a copy of which is attached hereto. Janicki Logging Company, Inc., submits the *revision* under a reservation of rights to continue prosecuting its February 2, 1990 claim, and the contention that *this is not a new claim, but revised information in support of the original claim, which is now ripe for judicial adjudication.*

(Emphasis added.)

In a November 20, 1991, response, the contracting officer stated:

I have received your letter dated November 4, 1991. You indicated in your letter that this is a revised claim for the Sandhole Resale Timber Sale.

As Contracting Officer, I issued a Contract Disputes Act Decision on January 8, 1991 on Janicki's claim for damages on the Sandhole Resale Timber Sale. Janicki Logging Inc., was informed that this was the final decision of the Contracting Officer. They were also notified of the appeal procedures available to them if they were not in agreement with this decision.

I am enclosing a copy of the Contracting Officers [sic] decision dated January 8, 1991 for your information.

Because plaintiff expressly stated that it was not presenting a new claim, the contracting officer acted appropriately when he did not treat the letter as an effort by plaintiff to present a new claim under 41 U.S.C. § 605. Moreover, the letter did not ask for reconsideration of the contracting officer's denial, almost ten months earlier, of the prior claim. Rather, the letter apparently anticipated plaintiff's use of the higher estimates in litigation covering its earlier filed claim, which

---

**5.** In view of the lengthy period of time involved, this court need not address whether the dismissal of the district court action should be deemed

final when the Ninth Circuit issued its decision or when the period for seeking certiorari in the Supreme Court expired.

plaintiff explained "is now ripe for judicial adjudication." In any event, the contracting officer made clear that he was not reconsidering his prior final decision but rather was relying upon that decision, including the appeal procedures referred to therein. Plaintiff's effort to characterize its November 4, 1991, letter as a new claim therefore constitutes no more than an attorney's post hoc rationalization that is inconsistent with his prior representations.

The presentation of a claim to the contracting officer under Section 605 is a prerequisite to this court's jurisdiction under Section 609. *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985). Plaintiff's November 4, 1991, letter does not, as plaintiff alleges, constitute a distinct new claim and hence, this court lacks jurisdiction under Section 609 over a suit based exclusively on that letter.

## VIII.

To analyze the parties' cross-motions relating to plaintiff's takings claim, the court must consider certain additional facts. The contracting officer unilaterally deleted Unit 1 from the contract in an August 14, 1987, letter. The contracting officer specified that the deletion of Unit 1 was pursuant to Special Provision C6.25 of the contract, entitled "Protection of Habitat of Endangered, Threatened, and Sensitive Species," which incorporates Special Provision C8.2, entitled "Termination." The contracting officer also noted that his decision was subject to review pursuant to Special Provision C9.2 of the contract, entitled "Disputes." Special Provision C9.2 provides that "all disputes arising under or relating to this contract shall be resolved in accordance with th[is] provision."

In a September 30, 1987, letter, plaintiff challenged the contracting officer's decision to delete Unit 1 on the ground that the contracting officer lacked the requisite authority. The contracting officer rejected this challenge and the contract expired on January 16, 1990. On February 2, 1990, plaintiff submitted a claim to the contracting officer seeking compensation pursuant to the contract's disputes clause. Prior to the contracting officer issuing a decision on this

claim, plaintiff received a letter, purportedly written by the Chief of the Forest Service, which acknowledged that the contracting officer had exceeded his delegated authority and explained that pursuant to 36 C.F.R. § 223.116, the Chief of the Forest Service had the authority to delete Unit 1 from the contract. After acknowledging this defect, the Chief of the Forest Service proceeded to adopt the contracting officer's action as his own and terminate, in part, the contract pursuant to Special Provision C8.2. Special Provision C8.2 allows the Chief of the Forest Service to terminate the contract in certain circumstances involving serious environmental damage. The contracting officer thereafter issued a final decision on plaintiff's claim in which the contracting officer concluded that the termination of Unit 1, as adopted by the Chief of the Forest Service, was authorized under Special Provision C8.2 of the contract. The contracting officer then awarded plaintiff compensation for the termination pursuant to standards articulated in the contract.

Plaintiff contends that the contracting officer's deletion of Unit 1 from the contract when he lacked such authority, combined with the Forest Service's refusal to permit logging on Unit 1 prior to the contract's expiration, constitutes a Fifth Amendment taking for which just compensation is due. Plaintiff further argues that the Forest Service Chief's letter adopting the contracting officer's position cannot cure this taking because the Forest Service sent the letter after the contract had expired and, in any event, because the letter was not authored, signed, or approved by the Chief of the Forest Service. To support its takings argument, plaintiff cites *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), for the proposition that federal contracts constitute property protected by the Fifth Amendment. Plaintiff then argues that the termination of plaintiff's logging rights on Unit 1 amounted to a repudiation of the contract that constitutes a taking of plaintiff's property in violation of the Fifth Amendment.

Plaintiff's argument misunderstands the reach of the Fifth Amendment and the interface between the Fifth Amendment and government contracts. Plaintiff is correct that

federal contracts constitute property within the Fifth Amendment. In *Lynch,* 292 U.S. at 579, 54 S.Ct. at 843 (citations omitted), the Supreme Court explained: "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment." But the *Lynch* Court's classification of rights arising out of a contract as "property" simply means that for federal contracts, as for any other property, Fifth Amendment issues potentially can arise when the federal government, through legislative or administrative action, interferes with the property owner's use of its property. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987); *Richmond, Fredericksburg & Potomac R.R. v. United States,* 75 F.3d 648, 657 (Fed.Cir. 1996) (*RF & P*). Hence, to determine whether the instant complaint states a claim under the Fifth Amendment, this court must define the scope of plaintiff's property interest and then determine whether, according to the facts alleged in the complaint, the government can be argued to have interfered with plaintiff's use of that property.

In entering into the contract, the Forest Service agreed to undertake various obligations, including adherence to specified dispute resolution procedures. The Forest Service thereby rendered itself liable, under controlling contract law, in the event it failed to fulfill these obligations. In this setting, the property involved, *i.e.,* the "[r]ights against the United States arising out of [the] contract," is plaintiff's right, pursuant to both the terms of the contract and the applicable law governing contracts, to force the government to comply with the obligations to which it agreed in the contract.

Plaintiff has not stated a claim for a Fifth Amendment taking of this property because plaintiff has not alleged that the Forest Service ever engaged in legislative or administrative actions that abrogated or repudiated any contract obligation or otherwise impaired plaintiff's ability to enforce the rights plaintiff secured under the terms of the contract. To the contrary, at all times, the Forest Service purported to act pursuant to and consistent with the terms of the contract and never suggested that it was not bound by each term in the contract, including the provisions concerning dispute resolution. Hence, rather than acting as a sovereign and taking plaintiff's property for public use, the Forest Service acted in a proprietary capacity as a party to a contract and purported to exercise its rights for which it bargained in the contract. Plaintiff's property interest was not adversely affected because plaintiff remained unfettered in its ability to use the legal process defined in the contract and available under controlling contract law to enforce the contract according to its terms. *See RF & P,* 75 F.3d at 657.

Rather than raising a constitutional issue, the instant action involves nothing more than a garden variety contract dispute. The contract defines the parties' respective rights and establishes a procedure for resolving disputes that arise under the contract. Defendant alleges that its deletion of Unit 1 from the contract was authorized by the terms of the contract and plaintiff disagrees. If defendant is correct, then the Forest Service did not breach the terms of the contract and plaintiff would not be entitled to any damages. If plaintiff is correct, then defendant breached the contract and, assuming plaintiff filed a timely suit, defendant would be liable for contract damages for that breach. Thus, plaintiff's legitimate interests are protected in the law without any resort to constitutional protections. This is a straightforward contract action and the Fifth Amendment does not apply. Hence, defendant's motion to dismiss plaintiff's takings claim is granted and plaintiff's cross-motion is denied.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint is granted and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

IT IS SO ORDERED.