W.O. and Eliza NARRAMORE,
Plaintiffs–Appellees,

v.

The UNITED STATES, Defendant–
Appellant.

No. 91–1204.

United States Court of Appeals,
Federal Circuit.

April 7, 1992.

Richard A. Black, Copple, Chamberlin & Boehm, P.C., Phoenix, Ariz., argued, for plaintiffs-appellees.

Jacques B. Gelin, Atty., Dept. of Justice, Washington, D.C., argued, for defendant-appellant. With him on the brief were Richard B. Stewart, Asst. Atty. Gen., Robert L. Klarquist and Glen R. Goodsell, Attys.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

From 1959 to 1960, the United States condemned 5,398 acres of the Narramores' property to obtain flowage easements for the Painted Rock Reservoir. In a 1980

action against the United States, the Narramores alleged that the Corps of Engineers had inundated their land beyond the scope of the easements. The United States District Court for the District of Arizona granted the Narramores' motion to reopen the 1960 condemnation judgment. *Narramore v. United States*, No. 80–916–PHX–RGS (D.Ariz. Oct. 2, 1990). Because the district court lacks jurisdiction, this court vacates that order and orders transfer of this case to the United States Claims Court.

## BACKGROUND

The Flood Control Act of 1950 authorized construction of Painted Rock Dam and Reservoir on the Gila River. Pub.L. No. 81–516, § 204, 64 Stat. 163, 170, 176 (1950). When Congress approved the project, the House of Representatives had before it a document containing a proposed operation schedule. H.R.Doc. No. 331, 81st Cong., 1st Sess. (1949). This proposed operation schedule—known as Plan A—outlined a plan to control the release of flood waters from the reservoir.

The Corps of Engineers completed the project in 1959 and then sought flowage easements for lands upstream of the dam. In the condemnation proceedings, the Corps offered as evidence a flood frequency chart which assumed management of water levels under Plan A. Under Plan A, the Corps engineering staff estimated that the dam would only inundate the Narramores' land when the reservoir reached full capacity. The Corps anticipated that the reservoir would reach full capacity, and thus inundate the Narramores' property, only occasionally. Thus, in the 1959–1960 condemnation actions, the United States sought and acquired flowage easements "occasionally to overflow, flood, and submerge said land and all structures and improvements thereon."

To minimize flood damage downstream from the dam, the Corps did not release water according to Plan A. In 1966, for instance, the Gila river flooded. The reservoir filled and the Corps did not release water under Plan A. The Narramores sought a preliminary injunction requiring the Corps to adhere to Plan A. Citing sovereign immunity, the district court denied this motion. *See Narramore v. United States*, 852 F.2d 485, 489 (9th Cir.1988).

After another flood in 1973, the Narramores brought an action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1988). Again, they requested the district court to order compliance with Plan A. In a decision affirmed by the United States Court of Appeals for the Ninth Circuit, *Pierce v. United States*, 650 F.2d 202 (9th Cir.1981), the district court dismissed this action because the United States is immune from tort liability for negligent operation of a dam. *Id.* at 204–05.

After floods left the land inundated for almost three years (1978–1980), the Narramores filed a third suit in November 1980. The complaint contained five counts. Count one—a quiet title action—alleged that the Corps exceeded the scope of the easements and, in effect, took title to the inundated land. Count two requested declaratory judgment based on the quiet title allegations. Count three sought to set aside the earlier condemnations due to a mutually mistaken belief that Plan A would govern releases of impounded water. Count four alleged that the Corps, by exceeding the scope of the easements, had trespassed on the inundated lands. Count five alleged on the same facts a violation of the Narramores' civil rights.

The district court first granted the United States' motion for summary judgment based on laches. The court held that the Narramores' undue delay in bringing their suit barred relief. *See Narramore*, 852 F.2d at 493. Due to an unresolved issue of fact about when the landowners learned of their claim, the Ninth Circuit reversed and remanded. *Narramore*, 852 F.2d at 493. On remand, the district court granted the Narramores' motion under Fed.R.Civ.P. 60(b)(6), to reopen and reconsider the 1959 and 1960 judgments. *Narramore*, (D.Ariz. Oct. 2, 1990). The United States moved to transfer the case to the United States Claims Court alleging the district court lacked jurisdiction. The district court denied this motion to transfer. The United

States timely filed a notice of appeal to this court.

## DISCUSSION

The Fifth Amendment to the Constitution prohibits the Federal Government from taking "private property ... for public use, without just compensation." This language presupposes both the Federal Government's authority to exercise the power of eminent domain and a property owner's right to seek just compensation. The Supreme Court has acknowledged both propositions. In *United States v. Carmack*, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946), the Court characterized the Fifth Amendment as a "tacit recognition of a preexisting power to take private property for public use." *Id.* at 241, 67 S.Ct. at 257. As recently as 1986, the Court also "recognized that a landowner is entitled to bring an action in inverse condemnation as a result of ' "the self-executing character of the constitutional provision with respect to compensation." ' " *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987) (quoting *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980) (quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed. 1972))).

The Federal Government may initiate an exercise of its eminent domain power in several ways. Occasionally Congress enacts a law to condemn private property. *See, e.g.,* 16 U.S.C. § 79c(b) (1988) (Redwood National Park). Upon direct legislative condemnation, Congress either creates procedures for just compensation of private property owners, *see, e.g.,* 16 U.S.C. § 79c(b)(2), or directs the proper federal agency to acquire the property, *see, e.g.,* 16 U.S.C. § 698(c) (1988) (Big Thicket National Preserve).

The General Condemnation Act of 1888 created a "straight condemnation" procedure. 40 U.S.C. § 257 (1988). Under this Act, the Federal Government files a condemnation complaint. Judicial proceedings then fix the just compensation for the taking. *Id.* During pendency of the proceedings, the private owner retains title to and possession of the property.

To give the Federal Government immediate possession of condemned property and avoid delays in federal construction projects, *see United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943), Congress in 1931 enacted an alternative to straight condemnation. 40 U.S.C. § 258a (1988). Section 258a permits federal agencies to file a "declaration of taking" and deposit an estimated amount of just compensation. The United States then takes possession of the property from the time of the declaration's filing, subject to a requirement to reimburse the property owner with interest to the extent that the judicial proceeding determines that the deposit falls short of just compensation.

██ When the Federal Government initiates eminent domain proceedings, federal courts lack authority to expand or contract the property or estate described in the condemnation filing. *Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). Thus, the legislative branch and executive agencies to which the legislature has delegated condemnation authority, not the judicial branch, determine the scope of taking necessary for the public purpose. The Supreme Court stated:

> [T]he amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Id.* at 35–36, 75 S.Ct. at 104. Thus, under the various condemnation statutes, a federal court enjoys no jurisdiction to entertain suits or counterclaims seeking to enlarge or contract the scope of the taking. Under the condemnation statutes, the judicial branch fixes the amount of just compensation—"the price of the taking"—for the property described in the Government's filing. *Id.* at 36, 75 S.Ct. at 104. Federal court jurisdiction does not extend beyond the scope of the Government's filing. *United States v. 3,317.39 Acres of Land,* 443 F.2d 104, 105–06 (8th Cir.1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972); *United States v. 38.60*

*Acres of Land,* 625 F.2d 196, 199 (8th Cir. 1980); *United States v. 101.88 Acres of Land,* 616 F.2d 762, 767 (5th Cir.1980); *United States v. 40.60 Acres of Land,* 483 F.2d 927, 928 (9th Cir.1973).

■ This jurisdictional limit springs from the sovereign immunity doctrine. "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the Court's jurisdiction." *United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The condemnation statutes do not waive sovereign immunity for property owners to institute counterclaims or suits seeking damages for takings beyond the scope of the Government's filing. *3,317.39 Acres,* 443 F.2d at 106. Rather those statutes confine the federal courts' inquiry to the property described in the Government's filing.

On October 13, 1959, the Corps of Engineers filed a declaration of taking under section 258a. Section 258a required the Corps to describe the "land or easement" proposed for acquisition. The Corps met this requirement.

According to this description, the Corps did not acquire a fee interest in the Narramores' property. Rather the Corps acquired "[a] perpetual right, power, privilege, and easement occasionally to overflow, flood, and submerge said land." *See also Narramore,* 852 F.2d at 488 (At trial, the Corps of Engineers testified that it "did not want to take the land from the owner, [but] only [wanted] ... an easement to overflow intermittently on rare occasions."). Within its proper jurisdiction, the district court in 1959–1960 set a just compensation for the flowage easement on the Narramores' property.

The Narramores now complain that the Corps has taken property beyond the scope of the flowage easements. Specifically, the Narramores claim that the dam floods their property more than "occasionally." The Narramores now claim that the Government has taken a fee interest in their property.

Although the Arizona district court lacks jurisdiction to adjudicate a purported condemnation beyond the scope of the declaration of taking, federal law does not leave the Narramores without a remedy. The Fifth Amendment guarantees a property owner the right to seek damages for the full extent of a taking. *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980). The condemnation statutes provide a remedy for takings initiated by the Government. The Constitution demands a remedy for instances when the Government takes more property than it has condemned. The United States Code provides this remedy in the Tucker Act. 28 U.S.C. § 1491 (1988). The Tucker Act vests the United States Claims Court with jurisdiction over claims against the United States "founded ... upon the Constitution." *Id.* Thus, the Tucker Act fulfills the promise of the Fifth Amendment. *Preseault v. ICC,* 494 U.S. 1, 11–13, 110 S.Ct. 914, 921–22, 108 L.Ed.2d 1 (1990).

■ When a property owner seeks compensation for a taking beyond the scope of the Government's condemnation action, the proper remedy is the Tucker Act; thus, when damages exceed $10,000, the proper forum is the Claims Court. For claims under $10,000, the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1988), provides concurrent jurisdiction in the district courts. *Id.*

The Supreme Court has often reaffirmed the "well-established distinction between condemnation actions and physical takings by governmental bodies that may entitle a landowner to sue for compensation." *Clarke,* 445 U.S. at 256, 100 S.Ct. at 1129; *see also Preseault,* 494 U.S. at 11–13, 110 S.Ct. at 921–22; *United States v. Dickinson,* 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). This distinction may require adjudication of a property owner's inverse condemnation claim at a different time and in a different court from the Government's condemnation action. Nonetheless, the Fifth Amendment does not

require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provi-

sion for obtaining compensation" exist at that time of the taking.

*Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124–25, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) (quoting *Cherokee Nations v. Southern Kansas Ry.,* 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890))). Thus, the Supreme Court has repeatedly stated:

> If there is a taking, the claim is "founded upon the Constitution" and within the jurisdiction of the [Claims Court] to hear and determine. *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946).

*Preseault,* 494 U.S. at 12, 110 S.Ct. at 922.

■ Thus, the Narramores' remedy for an alleged taking beyond the scope of the 1959–1960 flowage easement is a Tucker Act claim in the Claims Court. Because the damages sought by the Narramores would exceed $10,000, the Arizona district court lacks jurisdiction to hear and determine the claim.

The trial court erred by granting plaintiff's motion under Fed.R.Civ.P. 60(b)(6) to reopen the 1959–1960 condemnation proceedings to assess the merits of awarding additional damages. The trial court lacked jurisdiction for such a proceeding. Moreover, as our sister circuit notes, Fed. R.Civ.P. 60(b) "cannot be used, as [Narra-more] wishes, to bootstrap the district court into jurisdiction it would not otherwise have." *Woodrum v. Southern Ry.,* 750 F.2d 876, 883 (11th Cir.), *cert. denied,* 474 U.S. 821, 106 S.Ct. 71, 88 L.Ed.2d 58 (1985). The district court also erred in denying the Government's motion to transfer this case to the Claims Court.

## CONCLUSION

The Narramores have stated a claim based upon the Government's taking of property beyond the scope of the Corps' declaration under 40 U.S.C. § 258a. The Narramores' remedy is a claim against the Federal Government in the Claims Court based upon the Tucker Act.

The order of the district court granting plaintiff's motion to reassess condemnation damages in Civ. 3034–PHX, 3164–PHX, 3233–PHX and 3359–PHX is hereby vacated with instruction to transfer the action to the United States Claims Court.

## COSTS

Each party will bear its own costs.

**VACATED AND REMANDED.**