**INTEGRATED LOGISTICS SUPPORT SYSTEMS INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–166C.**

United States Court of Federal Claims.

Sept. 30, 1998.

---

William Alexander, McLean, VA, for plaintiff. Douglas C. Proxmire and Timothy B. Mills, Patton Boggs, L.L.P., of counsel.

James W. Poirier, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

This matter is before the court on defendant's motion pursuant to RCFC 12(b)(4) to dismiss Count IV of plaintiff's complaint for failure to state a claim upon which relief can be granted. At issue are 1) whether defendant's motion demonstrates that the facts alleged in Count IV support a claim seeking just compensation pursuant to the Fifth Amendment's takings clause and 2) whether the facts alleged asserting an implied-in-fact contract entitle plaintiff to relief. Argument is deemed unnecessary.

## FACTS

The facts stated herein are drawn from plaintiff's complaint, unless otherwise noted. On May 16, 1989, the United States Navy awarded Integrated Logistics Support Systems International, Inc. ("plaintiff"), a contract for the design, procurement, and installation of a warehousing system for F–18 spare parts and support equipment to assist the Kuwait Air Force (the "KAF"). The contract recited that performance would occur in two segments. Plaintiff's performance of the first segment proceeded unimpeded until the 1990 Iraqi invasion of Kuwait, which precipitated the Persian Gulf War. These events interrupted contract performance and resulted in the destruction of the KAF's project facilities at the work site in Kuwait, thus preventing plaintiff from utilizing logistic support material and equipment procured by plaintiff for both segments.

The onset of the war substantively changed the timing and scope of the second segment. In the aftermath of the conflict, on October 1, 1992, plaintiff, the Navy, and the KAF met to discuss performance of the second segment. The Navy and the KAF advised plaintiff that completion was required within 90 days after receiving notice to proceed and impressed upon plaintiff that time

was of the essence. Plaintiff procured the materials [1] necessary to perform the project with these concerns in mind.

These materials were those necessary to support and equip the workforce and to deliver the required F–18 spare parts warehouse logistics system. Based on its discussions with the Navy and the KAF and visits to the work site, plaintiff procured materials to accommodate working in a "bare base environment." Compl. filed Mar. 14, 1997, ¶ 14. Plaintiff's work site consequently lacked necessary facilities, such as water, electricity, office space, and lighting, and confronted dangerous conditions, including unexploded ordnance from the war and a harsh desert climate. Plaintiff's procurement efforts to mitigate these conditions were motivated in part to ensure compliance with U.S. Government safety and health requirements for its workforce.

On November 15, 1992, the KAF wrote to the Navy requesting that the Navy direct plaintiff to commence work immediately on the project, and the Navy alerted plaintiff accordingly. By letter dated December 14, 1992, the Navy informed the KAF that plaintiff's performance was imminent. Pursuant to the Navy's and the KAF's direction to proceed, plaintiff submitted its cost and pricing data to the Navy identifying $1,046,224.00 of material purchased for work under the second segment of the contract.

The Navy issued Letter Contract No. 0140–92–C–AC73 [2] on June 15, 1993, to provide funding and coverage for the second segment of work. This obligated plaintiff to provide materials, supplies, equipment, and hardware "necessary for the furnishing of the required services." In reliance upon the representations of the Navy and the KAF that performance must be completed within 90 days, plaintiff allegedly incurred costs of at least $2,281,687.00 in procuring items necessary for performance.

During May and June 1993, a dispute arose between the parties regarding the condition of the project site and the materials necessary for contract performance. The Navy and the KAF contended that the work site was not bare base and that the materials purchased by the plaintiff to accommodate the extraordinary conditions of the work site were not necessary for contract performance. Specifically, the Navy and the KAF asserted that the work site afforded plaintiff adequate office space and power and that the work site had been completely swept of ordnance. Plaintiff not only disagreed with this characterization of the work site, but also maintained that, unless all materials purchased by plaintiff were shipped to Kuwait and utilized, plaintiff would not be able to perform the contract within the mandatory 90-day deadline.

On June 24, 1993, Lieutenant Colonel Faisal M. Ali of the KAF liaison office in Philadelphia, Pennsylvania, wrote to D.F. Young, Inc., Kuwait's forwarding agent in Baltimore, Maryland, with instructions to hold all shipment of plaintiff's materials. At approximately the same time, the Navy issued Modification P00001 to the contract identifying a list of materials that the Navy considered " 'necessary to accomplish the statement of work.' " Compl. ¶ 22. Notwithstanding the dispute endangering contract performance, plaintiff decided to commence performance of the second segment with the understanding that 1) the forwarding agent would be permitted to release all materials awaiting shipment to Kuwait, and 2) plaintiff would charge the Navy only for the materials actually required to perform work under the contract.

According to plaintiff, upon its arrival at the work site, the Navy and the KAF recanted their previous position and acknowledged that the site lacked the necessary shelter, power, and water to support the project's operation. Plaintiff commenced and completed performance within the 90–day period, utilizing all the materials purchased for use under the second segment. On October 6, 1993, plaintiff wrote to the Navy, again reiterating its understanding that plaintiff would be compensated for all materials necessary to

---

1. *Section C of Letter Contract No. 0140–92–C–AC73 states that the term "material" includes "supplies, equipment, hardware, automatic data processing equipment, and software."*

2. Paragraph 17 of the complaint incorporates by references sections B–L of the contract.

perform the contract. On November 18, 1993, the Navy and the KAF inspected and accepted plaintiff's work product. The Navy then issued the DD250 form on November 24, 1993, memorializing its acceptance without reservation.

Plaintiff contends that in addition to incurring the costs of the aforementioned materials, plaintiff incurred unreimbursed labor costs, consulting costs, and other costs at a minimum of $1,598,418.00 necessary to complete performance. On May 5, 1994, plaintiff submitted a certified claim seeking recovery of its costs. The contracting officer issued a final decision on March 15, 1996, denying reimbursement of the costs claimed, including at least $3,114,483.00 of the costs plaintiff incurred during the course of performance. The decision relied, in part, on the Navy's position that plaintiff's costs were not "reasonably incurred and not necessary to perform the contract." Compl. ¶ 33. The materials furnished by plaintiff to perform the contract were consumed during the course of performance, were incorporated into the KAF's facility and are currently in use, or are being held in a restricted area where plaintiff has no legal right to inspection or appropriation.

On March 14, 1997, plaintiff filed a complaint alleging, *inter alia,* breach of contract and, in the alternative, a compensable taking of its property. After a year of discovery, defendant moved to dismiss plaintiff's taking claim and any claim based upon allegations of an implied-in-fact contract.

## DISCUSSION

When considering a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(4), the court will follow "the accepted rule that a complaint should not be dismissed ... unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A dismissal for failure to state a claim is a decision on the merits, calling for the court to focus on the allegations of the complaint. *See Gould, Inc. v. United States,* 67 F.3d 925, 929 (Fed.Cir. 1995). The court must accept the factual allegations of the complaint as true, indulging all inferences in favor of the plaintiff. Because granting such a motion terminates the case on its merits, the complaint is construed broadly. *See Ponder v. United States,* 117 F.3d 549, 552–53 (Fed.Cir.1997). In order to prevail, the moving party must establish that the complaint fails to offer evidence in the form of factual allegations to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

1. *Fifth Amendment taking claim*

Count IV of the complaint recites:

51. [Plaintiff] repeats and realleges each and every allegation contained in Paragraph "1" through "50" above as though fully set forth herein.

52. As a result of the aforementioned actions of the Navy, [plaintiff's] property has been improperly taken without just compensation in violation of the Fifth Amendment of the Constitution of the United States.

53. This taking has caused [plaintiff] to suffer losses in the amount of $1,598,418 plus interest, for which the Navy has failed and refused to pay, although past due and duly denied.

Compl. ¶¶ 51–53.

In support of its motion, defendant places plaintiff's taking claim upon the horns of an inescapable legal dilemma. Defendant asserts that no compensation can be awarded for an unlawful or unauthorized taking. However, to the extent plaintiff complains that the Navy acted lawfully in the administration of the contract, defendant asserts that the Fifth Amendment takings clause may not be employed for the purpose of obscuring or eviscerating contract rights lawfully possessed and exercised by the Navy pursuant to terms of the contract. Furthermore, defendant puts forward the logical corollary—to wit, that plaintiff cannot augment retrospectively its contract rights with constitutional rights allegedly afforded by the Fifth Amendment.

It is an established tenet of takings jurisprudence that an unauthorized or unlaw-

ful taking cannot support a claim for just compensation. *See Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 898 (Fed.Cir.1986); *Armijo v. United States,* 229 Ct.Cl. 34, 40, 663 F.2d 90, 95 (1981). Similarly, upon the transfer of property to the Government pursuant to a lawfully executed bilateral agreement, the Government cannot be compelled to render just compensation for the alleged taking of such property. *See Richmond, Fredericksburg & Potomac R.R. v. United States,* 75 F.3d 648, 657 (Fed.Cir. 1996). As defendant points out, if "the Navy was merely exercising contract rights that the Navy possessed," Def's Br. filed June 23, 1998, at 8, plaintiff could not raise a colorable claim under the Fifth Amendment. Defendant is also correct in stating that plaintiff cannot exploit the Fifth Amendment to amend unilaterally a contract in an effort to rectify what hindsight reveals as an unappealing bargain. It must be alleged that plaintiff held an interest in property and that the Government interfered with the use of that property; otherwise, plaintiff's taking claim will not lie. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Richmond, Fredericksburg & Potomac R.R.,* 75 F.3d at 657.

■ Count IV puts forth the following pertinent facts: First, the subject materials were either consumed during the course of performance or since have been appropriated by the Navy or the KAF subsequent to an unqualified acceptance. Second, plaintiff's successful performance of the contract within the rigorous 90-day schedule would not have been possible but for the shipment and utilization of all of the subject materials. Third, despite plaintiff's purchase of the materials, the Navy has not reimbursed plaintiff for its costs. Fourth, the Navy and the KAF acknowledged that the work site was in fact bare base and authorized the shipment of materials from D.F. Young, Inc., to Kuwait. Finally, the entire lot of materials shipped and utilized in furtherance of remedying the effects of the bare base environment was necessary to the performance of the contract. When considered in a light most favorable to plaintiff, these facts are sufficient to withstand defendant's motion.

Plaintiff relies on *Osprey Pacific Corp. v. United States,* 41 Fed.Cl. 150 (1998), to counter defendant's argument that the existence of an express contract obviates plaintiff's taking claim. Plaintiff's complaint and motion for summary judgment in *Osprey* rested on theories of breach of contract, taking of private property, and entitlement to reimbursement. Plaintiff, in the instant case, contends that the court in *Osprey* would not have entertained these alternative theories through defendant's motion to dismiss, discovery, cross-motions for summary judgment, and trial if the mere existence of a contract operated as a *per se* bar to the taking claim. Defendant distinguishes *Osprey* on the ground that the breach claim concerned a charter agreement among plaintiff, a third party, and the State of Oregon, rather than a contract directly obligating the United States. In the absence of an express contract with the United States that could have rendered plaintiff's taking claim beyond the boundary of plaintiff's available rights and remedies, defendant contends that *Osprey* is inapposite.

That the circumstances confronting plaintiff involve an express contract with the Government is not fatal to plaintiff's Count IV taking claim. Although *Osprey* may be distinguished from the instant case in the manner defendant suggests,[3] plaintiff's complaint recounts facts giving rise to the implication that the rights regarding the subject materials were not contemplated by the parties and reduced to writing. Furthermore, taking claims are not presumed to be foreclosed by claims for breach of express contract merely because the claims share the same factual background. *See Prudential Ins. Co. v. United States,* 801 F.2d 1295, 1300 n. 13 (Fed.Cir.1986) (citing *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93

---

**3.** Despite defendant's assertion that plaintiff's taking claim in *Osprey* was unrelated to the administration of a government contract, *see* Def's Br. filed Sep. 9, 1998, at 10, Chief Judge Smith's opinion notes that the State of Oregon's signature indicated approval of the charter agreement on behalf of the United States. *See Osprey,* 41 Fed.Cl. at 153.

L.Ed. 1765 (1949)); *United States v. General Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) (proposing Fifth Amendment takings clause as alternative means for relief in action involving alleged breach of express lease agreement); *see also Atlas Corp. v. United States,* 895 F.2d 745 (Fed. Cir.1990) (reaching merits of claims for breach of express contract, breach of implied contract, and Fifth Amendment taking). Because the court cannot conclude that the contract conferred expressly upon defendant rights of possession, use, ownership, and alienation in the materials, and because plaintiff has alleged facts sufficient to support the converse, defendant's motion does not preclude plaintiff from pleading a taking claim and breach of contract claim in the alternative.

### 2. *Implied-in-fact contract claim*

In addition to Count IV, defendant seeks to dismiss plaintiff's claim founded upon an implied-in-fact contract. Rather than address exclusively claims alleged in plaintiff's complaint, defendant's motion intends to reach the "rambling and vague allegation of 'one or more' implied-in-fact contracts which [plaintiff] set forth in its supplemental response to our requests for admissions nos. 1 and 2, and our interrogatories nos. 29 and 30." Def's Br. filed June 23, 1998, at 4. The court finds particularly troubling this effort to dismiss purported "claims" of an implied-in-fact contract appearing outside the four corners of plaintiff's complaint. The policy behind modern notice pleading respects a plaintiff's right to move forward with a claim, provided that the factual allegations within the complaint and any supplemental pleadings are detailed sufficiently to permit the mounting of a proper defense. Claims not pleaded

properly may not be advanced and need not be defended. Defendant's motion therefore will be considered only insofar as it refers to allegations contained in plaintiff's complaint.[4] *See Gould,* 67 F.3d at 929.

Five separate counts are identified in the complaint: Constructive Change, Breach of Contract, Equitable Estoppel, Fifth Amendment Taking, and Denial of Due Process. Although not given a distinct heading, defendant contends that the complaint contains "at least a rudimentary allegation of an implied-in-fact contract." Def's Br. filed Sept. 9, 1998, at 3.

> 9. On October 1, 1992, in the aftermath of the war, representatives of [plaintiff], the United States Navy ... and KAF met to discuss [plaintiff's] completion of the second segment of the project. During that meeting, the parties discussed the services, equipment and materials which [plaintiff] would provide to outfit the KAF's F–18 warehouses. At the end of the meeting, the KAF and the Navy directed [plaintiff] to prepare to perform the second segment of the May 16, 1989 contract.

Compl. ¶ 9. Therefore, defendant's motion is directed to what is pleaded in the complaint.

Defendant contends that an implied-in-fact contract may not be asserted as a basis for relief if an express contract already covers the same subject matter, relying on *Trauma Service Group v. United States,* 104 F.3d 1321, 1326 (Fed.Cir.1997), and *Atlas Corporation v. United States,* 895 F.2d 745, 754–55 (Fed.Cir.1990). *Trauma Service Group* instructs that the general requirements are identical for an express contract and an implied-in-fact contract with the United States. The party alleging the existence of the contract must demonstrate "a mutual intent to

---

4. Defendant's motion devotes only four sentences to address allegations of an implied-in-fact contract; plaintiff's response to this challenge is limited to one footnote. In light of this perfunctory treatment, the court would not have expected defendant's thorough and expansive address of the issue in its reply. Fundamental fairness demands that the subject matter of the reply brief be limited to that which is proffered in the moving and opposition briefs. *See Commercial Contractors, Inc. v. United States,* 154 F.3d 1357, 1366–67 (Fed.Cir.1998); *cf. Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 409–10 (1st Cir.1985); *First Nat'l Bank in Dallas v. United States,* 190 Ct.Cl. 400, 414 n. 12, 420 F.2d 725, 732 n. 12 (1970). Thus, any arguments raised in the reply of which defendant did not timely apprise plaintiff will not be considered in connection with this motion, *e.g.,* the effect of plaintiff's President Johnny V. Carter's invoking the Fifth Amendment.

contract including an offer, an acceptance, and consideration." *Trauma Serv. Group*, 104 F.3d at 1325. In addition "the Government representative who entered or ratified the agreement [must be shown to have] had actual authority to bind the United States." *Id.* (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990)).

■ The dispute in *Trauma Service Group* turned on whether the express agreement provided for costs associated with the salary of a certain X-ray technician. Plaintiff contended that the technician's salary was not covered by the agreement and that the parties had an implied-in-fact contract under which plaintiff held a right to reimbursement. The court's analysis of the extent to which the express agreement implicated the subject matter of plaintiff's alleged implied-in-fact contract included: 1) the provisions of the express contract, 2) statements made by the parties during negotiation of the express contract, 3) parol documents, and 4) the intent of the parties. The Federal Circuit affirmed the grant of a motion to dismiss the claim of implied-in-fact contract after concluding that the salary costs associated with the technician were within the purview of the express contract.[5] In the course of a similar analysis, the court in *Atlas* stated: "The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." *Atlas*, 895 F.2d at 754–55 (citing *ITT Fed. Support Servs. v. United States*, 209 Ct.Cl. 157, 168 n. 12, 531 F.2d 522, 528 n. 12 (1976)); *cf. Klebe v. United States*, 263 U.S. 188, 191–92, 44 S.Ct. 58, 68 L.Ed. 244 (1923).

■ Paragraph 9 of the complaint alleges that the subject materials were procured in preparation of performance of the contract subsequent to a discussion among plaintiff, the Navy, and the KAF. Assuming that this discussion forms the basis for plaintiff's implied contract claim, defendant has yet to identify any deficiency in the complaint suggesting that the subject matter of this discussion is not "entirely unrelated" to the express

contract insofar as it may frame a new and different contract. Materials outside of the pleadings need not be consulted in considering a motion to dismiss for failure to state a claim.

Defendant has conceded that the complaint contains allegations of an implied-in-fact contract. Def's Br. filed Sept. 9, 1998, at 7. The analysis attendant upon a motion to dismiss is grounded entirely on questions of law, guided by the facts alleged in the complaint. The court will not engage in a balancing of defendant's inferences of fact from discovery materials against the facts averred in plaintiff's complaint. Rather, the filings before the court compel the conclusion—consistent with *Conley* and its progeny—that defendant has failed to establish an insufficiency in the factual allegations necessary to support plaintiff's implied-in-fact contract claim.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion to dismiss Count IV of plaintiff's complaint is denied.

2. Defendant's motion to dismiss allegations of implied-in-fact contract within plaintiff's complaint is denied.

3. A status conference shall be held at 2:30 p.m. on Friday, October 16, 1998, in the National Courts Building. The parties shall be prepared to set a discovery deadline and propose a trial schedule.

---

5. Although the Federal Circuit examined materials beyond plaintiff's complaint, it need not have done so; for the purposes of the present motion, the court declines to adopt this approach.