**BUSE TIMBER & SALES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–725 C.**

United States Court of Federal Claims.

Nov. 4, 1999.

Alan I. Saltman, Washington, D.C., for plaintiff.   Richard W. Goeken, Washington, D.C., of counsel.

Gerald M. Alexander, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Kathryn A. Bleecker, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

In this government contract action, plaintiff, Buse Timber & Sales, Inc., seeks to recover damages it incurred under a contract entered into with the United States Department of Agriculture Forest Service for the sale and harvest of timber located in the Mount Baker–Snoqualmie National Forest in Washington State. Plaintiff has asserted claims for breach of contract and a violation of the Takings Clause of the Fifth Amendment of the United States Constitution. This case is currently before the court on defendant's motions to dismiss (1) the takings claim for failure to state a claim upon which relief can be granted and (2) the breach of contract claims for lack of subject matter jurisdiction. Defendant first argues that plaintiff has failed to state a Fifth Amendment takings claim because interference with contractual rights results in a contract, rather than a takings, claim. Defendant also argues that this court lacks subject matter jurisdiction over the breach of contract claims because the contracting officer lacked authority under the Contract Disputes Act (CDA) of 1978, § 6(a), 41 U.S.C. § 605(a) (1994), to issue a final decision on those claims. Oral argument was held on October 12, 1999. For the reasons set forth below, the court grants defendant's motion to dismiss the takings claim. With respect to plaintiff's breach of contract claims, defendant's motion to dismiss is denied.

## BACKGROUND

This case concerns the Clear Creek timber sale contract made between plaintiff, Buse

Timber & Sales, Inc. (Buse Timber), and defendant, the United States, acting through the United States Department of Agriculture, United States Forest Service (Forest Service), for the sale and harvest of timber located in the Mt. Baker–Snoqualmie National Forest in Washington State. The contract was authorized by Section 318 of the Department of the Interior Appropriations Act of 1990, Pub.L. No. 101–121, 103 Stat. 701, 745–750 (1989). On August 29, 1990, Buse Timber and the Forest Service entered into a contract which called for the Forest Service to sell and permit Buse Timber to cut, remove, and pay for a total estimated volume of 3,400 board feet of net merchantable timber in a clearcut unit in the Clear Creek sale area. The normal operating season for the Clear Creek sale was April 15 to October 15. Buse Timber planned to harvest the timber in the fall of 1992. To meet this objective, Buse Timber made initial preparations during the summer and fall of 1991.

Despite the Forest Service's award of the contract, the Forest Service suspended Buse Timber's performance under the contract on July 20, 1992, before timber harvesting had begun. The Forest Service's decision to suspend timber falling was prompted by the detection of a small, robinsized seabird known as the "marbled murrelet" in the sale area. Initially, timber harvesting was suspended until surveying of the area was complete and a biological evaluation could be prepared. On August 19, 1992, the Forest Service informed Buse Timber that the restriction would remain in place through September 15, 1992. On September 16, 1992, Buse Timber began harvesting operations. However, that same day a Temporary Restraining Order (TRO) was issued prohibiting the Forest Service from harvesting timber for 10 days in the marbled murrelet's habitat, including the Mt. Baker–Snoqualmie Forest. *Marbled Murrelet v. Lujan*, No. C91–522R (W.D.Wash. Sept. 16, 1992).[1] On September 17, 1992, the Forest Service again suspended

---

1. Public concern for the protection of the marbled murrelet arose in 1988 when a petition was filed with the United States Fish and Wildlife Service (FWS) requesting that the marbled murrelet be listed as a "threatened species". In 1991, when the FWS failed to make a final decision whether or not to list the marbled mur-

relet as a threatened species, several chapters of the Audubon Society filed suit against the FWS seeking to compel FWS to make that decision. The Forest Service was added as a defendant in the case based on allegations of its failure to protect a viable population of marbled murrelets.

Buse Timber's operations on the Clear Creek timber sale. Although the TRO expired on its own terms on September 26, 1992, the Forest Service voluntarily continued the suspension until September 29, 1992. As part of a settlement agreement, the Forest Service promised that in the event the Fish and Wildlife Service (FWS) decided to list the marbled murrelet as a threatened species, the Forest Service would not fell any trees until it had made a determination as to whether or not the felling of the trees would affect the marbled murrelet. On September 28, 1992, pursuant to the Endangered Species Act, Pub.L. No. 93–205, 87 Stat. 884 (1973), the FWS listed the marbled murrelet as a threatened species in California, Oregon, and Washington. As a result, all harvesting operations on the Clear Creek sale were suspended indefinitely.[2]

On September 10, 1998, pursuant to the CDA, Buse Timber submitted a certified claim in the amount of $6,290,485.35 [3] to the contracting officer (CO) alleging improper suspension of operations and misrepresentations in the contract. Plaintiff's claim for damages included lost market opportunity, increased costs of financing, unamortized road construction costs, bonding costs, and lost interest on deposits. On September 16, 1998, Buse Timber also filed suit in this court alleging that the Forest Service's conduct in suspending the contract was a Fifth Amendment taking of its contract rights without just compensation. The CO issued a final decision on November 9, 1998, denying all but $3552.00 of Buse Timber's claim.[4] Buse Timber filed an amended complaint on February 22, 1999, restating the Fifth Amendment takings claim and challenging the contracting officer's final decision denying the majority of its claims. Buse Timber alleges breach of contract on the grounds of misrep-

resentation, unreasonable suspension of the contract, and uncompensated suspension of the contract. Plaintiff is seeking a judgment against the United States in the amount of $6,290,485.35.

## DISCUSSION

Plaintiff in this case has advanced two theories of recovery—an unconstitutional taking in Count I and breach of contract in Counts II, III, and IV. Plaintiff alleges that by suspending timber harvesting operations, the government has effected a taking of plaintiff's rights under the contract to cut, remove, and pay for timber in the Clear Creek sale area for which plaintiff is entitled to just compensation. Defendant moved to dismiss Count I, the takings claim, pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC) for failure to state a claim upon which relief can be granted. Defendant argues that this claim should be dismissed on the ground that interference with contractual rights amounts to a contract, rather than a takings, claim. Plaintiff also argues that defendant breached the contract on the grounds of misrepresentation, unreasonable suspension of the contract, and uncompensated suspension of the contract. Defendant moved to dismiss Counts II, III, and IV, the breach of contract claims, pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction, contending that the contracting officer lacked authority to consider plaintiff's claim because plaintiff initiated litigation in this court prior to receiving a final decision from the contracting officer.

## I. Failure to State a Claim Upon Which Relief Can be Granted

The Supreme Court set forth the standard for evaluating motions to dismiss for failure

---

**2.** The Rescissions Act, Pub.L. No. 104–19, § 2001(k), 109 Stat. 194, 245 (1995), required the Forest Service to provide alternative timber of equal volume, of like kind and value, to be offered to the contractors on several timber sales that had been suspended for environmental reasons, including the Clear Creek timber sale. On or about September 17, 1996, Buse Timber executed a settlement agreement allowing the Forest Service more time than permitted in the statute to provide alternative timber. At this time, the Forest Service and Buse Timber have not

reached an agreement with regard to replacement volume for the Clear Creek timber sale.

**3.** Although plaintiff's amended complaint represents the amount of the claim submitted to the contracting officer to be $6,290,485.35, the actual claim submitted on September 10, 1998, totaled $6,294,420.56.

**4.** The contracting officer's award to Buse Timber was limited to bonding costs for the period of September, 1992, through September, 1996.

to state a claim in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Conley* provides that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 45–46, 78 S.Ct. 99; *see also Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). Therefore, when a plaintiff is unable to assert a set of facts supporting the claim, the motion to dismiss should be granted. *See Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir.1988). In evaluating a motion to dismiss under Rule 12(b)(4), the allegations of the complaint should be construed in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Applying these standards to the takings claim, the court holds that plaintiff has failed to state a claim upon which relief can be granted.

■ Plaintiff alleges defendant took plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the Constitution. The Fifth Amendment provides in part that "private property [shall not] be taken for public use, without just compensation." *U.S. Const. Amend. V.* In order to successfully bring a Fifth Amendment takings claim, plaintiff must first demonstrate the existence of a "legally-cognizable property interest." *National Micrographics Sys., Inc. v. United States,* 38 Fed.Cl. 46, 51 (1997) (quoting *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir.1993)). Fifth Amendment issues arise when the federal government, through legislative or administrative action, interferes with a property owner's use of his or her property. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 75 F.3d 648, 657 (Fed. Cir.1996); *Janicki Logging Co., Inc. v. United States,* 36 Fed.Cl. 338, 345 (1996). In order to determine whether the complaint states a claim under the Fifth Amendment, this court must first define plaintiff's property interest and then determine whether, according to the facts alleged in the complaint, the government interfered with plaintiff's use of that property.

In this case, plaintiff argues that contract rights granted to plaintiff under the Clear Creek contract are private property within the meaning of the Fifth Amendment. Defendant contends this claim should be dismissed on the ground that interference with contractual rights results in a contract, rather than a takings, claim. Plaintiff's reliance on contractually-based property rights poses a significant obstacle to be overcome. *See Scott Timber Co. v. United States,* 44 Fed.Cl. 170, 182 (1999); *see also Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 559 (1999); *J & E Salvage Co. v. United States,* 36 Fed.Cl. 192, 195 (1996).

■ The "classic" takings cases deal with appropriations of tangible property by the government, especially the taking of land. In this case, however, the property taken was plaintiff's right to performance under the contract. Thus, it was the contract itself that was the subject of the taking. Plaintiff is correct in stating that a contract constitutes property within the meaning of the Fifth Amendment. In *Lynch v. United States,* the Supreme Court explained that valid contracts are property which is protected by the Fifth Amendment, regardless of whether the obligor is a private party, a municipality, a State or the United States. 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). However, the "concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Baggett Transp. Co. v. United States,* 969 F.2d 1028, 1034 (Fed.Cir.1992) (quoting *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978)); *see J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 411 F.2d 1246, 1249 (1969); *see also Marathon Oil Co. v. United States,* 16 Cl.Ct. 332, 339 (1989). Regardless, in cases where the rights respecting the "taken" material were not reduced to writing by the parties, both takings and breach claims have been permitted. *See Atlas Corp. v.*

*United States,* 895 F.2d 745 (Fed.Cir.1990); *Integrated Logistics Support Sys. Int'l., Inc. v. United States,* 42 Fed.Cl. 30 (1998). Similarly, takings of contracts have been found where the government takes away property already acquired under the operation of the contract, deprives fruits already reduced to possession by a lawfully made contracts, or repudiates debts to save money. *See Bowen v. Public Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986); *Perry v. United States,* 294 U.S. 330, 350–351, 55 S.Ct. 432, 79 L.Ed. 912 (1935); *Lynch v. United States,* 292 U.S. 571, 576–577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

In arguing that plaintiff has, indeed, properly stated a claim for relief under the Fifth Amendment, plaintiff cites to *Integrated Logistics Support Sys. Int'l., Inc. v. United States,* 42 Fed.Cl. 30 (1998). In that case, the court found that under certain circumstances, the involvement of an express contract is not necessarily fatal to a takings claim. In *Integrated Logistics,* plaintiff recounted facts giving rise to the implication that the rights regarding the materials which were the subject of the takings claim were not contemplated by the parties and reduced to writing. *Id.* at 34. The court held that because the contract did not confer expressly upon defendant rights of possession, use, ownership, and alienation in the materials, plaintiff was not precluded from pleading a takings claim and breach of contract claim in the alternative. *Id.* at 35.

Plaintiff's reliance on *Integrated Logistics* in the context of this case is misplaced. Simply stated, where the government is asserting an interest in property it rightfully possesses pursuant to a contract, plaintiff is deprived of nothing and there is not a taking. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 75 F.3d 648, 657 (Fed.Cir.1996). In the instant case, the express terms of the contract define the parties' respective rights and responsibilities which address the eventualities at issue before this court. Under the contract with Buse Timber, the Forest Service obtained certain rights and incurred specific responsibilities as did Buse Timber. Here, the Forest Service agreed to sell and permit Buse Timber to cut and remove timber in a specified area, and Buse Timber agreed to purchase, cut, and remove said timber. However, the Forest Service maintained all right, title and interest in the timber until it was cut, scaled, removed, and paid for at which time title would pass to Buse Timber. Clearly, the property interest allegedly taken was the right to performance under the contract rather than title to the unharvested timber. However, pursuant to the contract, the government had the right to suspend, modify or cancel the contract. Furthermore, the contract also specified a damages formula in the event of a partial or total termination of the contract by the Forest Service for the protection of the habitat of endangered or threatened species.

Plaintiff argues that defendant's act of indefinitely suspending the contract effected the alleged taking. Undoubtedly, defendant maintained the right to delay or suspend the contract; however, whether the government had the right to indefinitely suspend the contract is a contracts law question rather than a constitutional question. If defendant's actions were unjustified or unreasonable, plaintiff's rights emanate from the contract, not the Fifth Amendment. It appears that the Forest Service purported to act pursuant to and consistent with the terms of the contract. Even if the listing of the marbled murrelet as an endangered species were a sovereign act, that very event was anticipated and provided for in the contract. The Forest Service's conduct appears to be no more than the exercise of its own rights for which it bargained for in the contract. Plaintiff's property interest has not been adversely affected because, at all times, plaintiff was able to use the legal process defined in the contract and available under controlling contract law to enforce the contract. Moreover, if this court were to hold that a constitutional taking occurred by suspending plaintiff's right to performance under the contract, the court would essentially be denying defendant its explicit right to delay or suspend the contract. The court concludes that plaintiff has failed to state a claim upon which relief can be granted for a Fifth Amendment taking. Accordingly, defendant's Rule 12(b)(4)

motion to dismiss for failure to state a claim is granted.

## II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant next argues that this court lacks jurisdiction under RCFC 12(b)(1) to hear plaintiff's breach of contract claims because the contracting officer lacked authority under the CDA to issue a final decision on the claim. The jurisdiction of this court is defined in the Tucker Act, which provides, in part "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, ... or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1994). In evaluating defendant's motion to dismiss for lack of subject matter jurisdiction, the court must construe the facts in the complaint in the light most favorable to plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), accept any undisputed allegations of fact as true, *see Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988), and look no further than the allegations contained in the complaint to determine whether plaintiff's claims fall within the court's Tucker Act jurisdiction. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir. 1997). However, when jurisdiction is challenged, it is plaintiff's burden to establish the court's jurisdiction over the subject matter. *See Reynolds*, 846 F.2d at 748; *see also Sipco Servs. & Marine Inc. v. United States*, 30 Fed.Cl. 478, 482 (1994).

After reviewing the allegations contained in the amended complaint, the court concludes that plaintiff's claims fall within this court's jurisdiction. Plaintiff filed an amended complaint on February 22, 1999, that, in addition to the claim arising out of an alleged violation of the Takings Clause of the Fifth Amendment, included three claims for relief arising out of breach of contract. It is well-settled that the Tucker Act grants this court jurisdiction to entertain claims alleging that the government has taken private property for public use in violation of the Fifth Amendment of the United States Constitu-

tion. The Supreme Court has stated that "if there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Claims Court] to hear and determine." *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); *see Preseault v. ICC*, 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990); *see also Narramore v. United States*, 960 F.2d 1048, 1051 (Fed.Cir.1992). Similarly, the Tucker Act vests this court with jurisdiction to consider claims for breach of contract with the government. *See Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed.Cir. 1999); *Brown v. United States*, 86 F.3d 1554, 1559 (Fed.Cir.1996); *Brighton Village Assoc. v. United States*, 52 F.3d 1056, 1059 (Fed.Cir. 1995). The Tucker Act purports to make this court the exclusive trial court for hearing disputes over government contracts that arise under the CDA. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(2) (1994); *see also Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1572 (Fed.Cir.1995). Therefore, defendant's Rule 12(b)(1) motion to dismiss for lack of jurisdiction must be denied.

In this case, defendant argues that the contracting officer was without authority to issue a final decision on plaintiff's breach of contract claims pursuant to 28 U.S.C. § 516 (1994). The statute states "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States ... is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516 (1994). The court in *Sharman Co., Inc. v. United States*, explained that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation. That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim." 2 F.3d 1564, 1571 (Fed.Cir.1993), *overruled on other grounds, Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir.1995) (citations omitted). Defendant contends that upon the filing of plaintiff's original complaint on September 16, 1998, the contracting officer was divested of the power to issue a final decision on the breach of contract claims. As a result, defendant argues, the contracting officer's decision dated November 9, 1998, is invalid and cannot

serve as the basis for a CDA action under this court's jurisdiction. The court disagrees.

■■■ A contracting officer's final decision is a jurisdictional pre-requisite to filing suit in this court. The CDA allows the Court of Federal Claims to entertain claims arising out of any express or implied contract. *See* 41 U.S.C. § 602(a)(1) (1994). In order for the court to have jurisdiction under the CDA, a government contractor must present a valid claim to the contracting officer and the contracting officer must issue a final decision on the claim. *See* 41 U.S.C. § 605(a), (b) (1994); *see also James M. Ellett Constr. Co., Inc. v. United States,* 93 F.3d 1537, 1541 (Fed.Cir.1996); *Case, Inc. v. United States,* 88 F.3d 1004, 1008 (Fed.Cir.1996); *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1573 (Fed. Cir.1995). An invalid contracting officer's decision may not serve as the basis for a CDA action. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed.Cir. 1991). A contracting officer's final decision is invalid when the contracting officer lacked authority to issue it. *See Case, Inc.,* 88 F.3d at 1009. Therefore, in cases where the contracting officer lacks authority to issue a final decision, that decision cannot serve as the basis for a CDA action in this court.

Defendant relies on the above-mentioned statute, 28 U.S.C. § 516 (1994), as support for the contention that the contracting officer lacked authority to issue a final decision in this case. However, the statute has been narrowly construed because of its potential for disruptive effects. *See Case, Inc.,* 88 F.3d at 1011; *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889, 901 (1976); *Alaska Pulp Corp. v. United States,* 34 Fed.Cl. 100, 103 (1995); *Sipco Servs. & Marine Inc.,* 30 Fed.Cl. at 485. Application of the statute has been limited to the conduct of litigation pending against the United States, and to exclude other matters, albeit related, that are not yet pending. *See Hughes Aircraft Co.,* 534 F.2d at 901; *see also Sipco Servs. & Marine Inc.,* 30 Fed.Cl. at 485.

For the statute to have effect in the instant case, the complaint and the matters pending before the contracting officer would have to be the same CDA claim. *See* FAR § 3.201; 48 C.F.R. § 33.201 (1998). Defendant contends that plaintiff's takings claim and breach of contract claims are the "same" because the claims are based on the same factual predicate and request the same amount for relief.

The court in *Sharman Co., Inc.,* held that a claim is the same if it "alleges entitlement to the same money based on the same partial performance, only under a different legal label." 2 F.3d at 1571. In *Sharman Co., Inc.,* the court found that the contracting officer's "final" decision on the government's claim for a return of unliquidated progress payments, dated October 18, 1990, was not valid because entitlement to progress payments was put into litigation by plaintiff's February 2, 1990, complaint claiming entitlement to the exact same progress payments under a quantum meruit theory. *Id.* at 1569. As a result, the court held that subject matter jurisdiction was lacking because there was no final decision issued by the contracting officer at the time the lawsuit was filed. *Id.* Furthermore, the court held that plaintiff's amended complaint challenging the government's right to return of the progress payments and the corresponding government counterclaim had no effect on the jurisdictional determination because the amended complaint involved the "same unliquidated progress payments and the same partial performance, and is therefore effectively the same claim" as the original complaint. *Id.*

■■■ After *Sharman Co., Inc.,* this court and the Court of Appeals for the Federal Circuit have held that the fact a claim involving a public contract is in litigation does not deprive the contracting officer of authority to decide a contractors claim unless it is identical to the claim in litigation. *See McDonnell Douglas Corp. v. United States,* 37 Fed.Cl. 285, 289 (1997); *see also Case Inc.,* 88 F.3d at 1011 (distinguishing critical fact in *Sharman* that contractor's initial claim and government's subsequent conduct were "mirror images" of same claim); *Alaska Pulp,* 34 Fed. Cl. at 103 (*Sharman* establishes that the touchstone for the operation of the statute is whether the particular CDA claim is already in litigation by the filing of the complaint);

*Boeing Co. v. United States*, 31 Fed.Cl. 289, 292 (1994) (contracting officer cannot address a CDA claim which is in litigation). Furthermore, the mere overlap of legal and factual issues between that which is in court and that which is put in issue by a claim pending before the contracting officer does not implicate the statute. *See Boeing Co.*, 31 Fed.Cl. at 293. Rather, the complaint and the matters pending before the contracting officer have to be the same CDA claim. *See* FAR § 33.201; *Boeing Co.*, 31 Fed.Cl. at 293. Therefore, when a claim is properly before the court, the contracting officer has no authority to later decide that claim.

■ In the instant case, the claim pending in litigation before this court was not the same claim awaiting the contracting officer's final decision. Here, plaintiff's original complaint challenged defendant's conduct as a taking of contract rights under the Fifth Amendment of the Constitution; it did not place the breach of contract claims before the court. Moreover, plaintiff's claims alleging a taking of property in contravention of the Fifth Amendment and breach of contract are separate and distinct claims. Plaintiff bases its claim of rights upon independent sources. A takings claim arises from rights protected by the Constitution. The Fifth Amendment guarantees a property owner the right to seek damages for the full extent of a "taking". *See United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980); *see also Narramore v. United States*, 960 F.2d 1048, 1050 (Fed.Cir.1992). However, not every deprivation of use, possession, or control of property is a taking. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978). The judicial inquiry in a takings case focuses on the degree of harm, or more specifically, the extent the use of private property has been impaired by government action. *Allenfield Assoc. v. United States*, 40 Fed.Cl. 471, 488 (1998)(*citing Plaintiffs in Winstar–Related Cases v. United States*, 37 Fed.Cl. 174 (1997)).

In contrast, breach of contract claims arise when parties seek, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract. *See* FAR § 3.201. A party to a valid contract has an absolute right not to have that contract violated, and the contract itself implicitly contains a promise to pay damages in the event of a breach. *Allenfield Assoc.*, 40 Fed.Cl. at 488. Furthermore, takings and breach of contract claims are not the same for jurisdictional purposes. A takings claim comes to the court directly under the Tucker Act, whereas a breach of contract claim must first satisfy jurisdictional prerequisites under the CDA before it is ripe for jurisdiction in this court pursuant to the Tucker Act. *See* 28 U.S.C. § 1491(a)(1), (a)(2) (1994); 41 U.S.C. § 602 (1994). Unlike the claims in *Sharman Co., Inc.*, plaintiff's takings claim and breach of contract claims are not just different legal labels for the same claim. Accordingly, the fact the takings claim was pending litigation prior to the issuance of the contracting officer's final decision did not withdraw the contracting officer's authority to issue a final decision on the breach of contract claims.

Finally, jurisdiction is determined at the time the complaint is filed. *Sharman Co., Inc.*, 2 F.3d at 1569. In the instant case, plaintiff filed its complaint on September 16, 1998, and at a later date filed an amended complaint with this court. In *Sharman Co., Inc.*, the court found that a claim which was filed in an amended complaint would be considered as of the filing of the original complaint if the original complaint contained the same claim. *Id.* at 1571–72. Conversely, if a claim appearing in an amended complaint is not the same as one found in the original complaint, jurisdiction should be considered at the time the claim is actually filed. *See Sipco Servs. & Marine Inc.*, 30 Fed.Cl. at 485. In the present case, the takings claim and breach of contract claims clearly are not the same claim, and jurisdiction over the breach of contract claims should be assessed as of the date of plaintiff's amended complaint, February 22, 1999, the date the breach of contract claims "became part of the lawsuit". *Sharman Co., Inc.*, 2 F.3d at 1570.

Here, plaintiff submitted its breach of contract claims with the contracting officer on September 10, 1998. The contracting officer issued its final decision on those claims on

November 9, 1998. Thereafter, on February 22, 1999, plaintiff filed an amended complaint challenging the contracting officer's final decision. Accordingly, the contracting officer had authority to render the final decision and plaintiff's amended complaint challenging a valid final decision by the contracting officer is squarely within this court's jurisdiction. Therefore, defendant's motion to dismiss as to Counts II, III, and IV for lack of subject matter jurisdiction is denied.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(4) is *ALLOWED*; and defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1) is *DENIED*. The clerk is directed to dismiss Count I of the complaint.

The parties shall confer and jointly inform the court within thirty (30) days of the filing of this order of their proposed recommendation(s) as to how to proceed on the breach of contract claims.

**IT IS SO ORDERED.**