The **DETROIT EDISON COMPANY,**
Plaintiff,

v.

The **UNITED STATES, Defendant.**

No. 02–926C.

United States Court of Federal Claims.

April 24, 2003.

Alex D. Tomaszczuk, McLean, VA, for plaintiff. Jay E. Silberg, Devon E. Hewitt,

and Daniel S. Herzfeld, Shaw Pittman LLP, of counsel.

Harold D. Lester, Jr., Washington DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Marian E. Sullivan, R. Alan Miller, Erin E. Powell, Heide L. Herrmann, Russell A. Shultis, William L. Olsen, Kevin B. Crawford, Department of Justice, and Marc Johnston, L. Dow Davis, IV and Jane K. Taylor, Department of Energy, of counsel.

### ORDER

MILLER, Judge.

Defendant has moved, pursuant to RCFC 12(b)(6), to dismiss plaintiff's takings claim for failure to state an actionable basis for relief due to the dual remedy sought under both a contract and a takings theory. An owner of commercial nuclear power plants contends that the Department of Energy's delayed disposal of the owner's nuclear by-product has forced it to house the nuclear material indefinitely, thereby depriving the owner of the full market value of the storage space. Defendant argues that plaintiff's remedy lies exclusively in contract. Argument is deemed unnecessary.

### FACTS

This case arises under to a contract between the Detroit Edison Company ("plaintiff") and the United States Department of Energy ("DOE"), whereby, in exchange for annual payments, DOE agreed to dispose of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") generated by plaintiff. The following facts are undisputed.

The contract at issue has its genesis in the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101–10270 (2003) (the "NWPA"). One of the stated purposes of the NWPA was "to devise a permanent solution to the problems of civilian radioactive waste disposal," as federal efforts to design such a solution had theretofore "not been adequate." 42 U.S.C. § 10131(a)(3) (2003). The NWPA recognized that "the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel," but charged the genera-

tors and owners of these products with financing the costs of the disposal. 42 U.S.C. § 10131(a)(4).

The NWPA authorized the Secretary of DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1) (2003). The contracts were to be executed on or before June 30, 1983, or no later than the date when the owner took title to, or commenced generation of, SNF or HLW. See 42 U.S.C. § 10222(b)(2)(A), (B).

DOE implemented the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High–Level Radioactive Waste (the "Standard Contract"), published at 10 C.F.R. § 961.11 (2003), to set forth the conditions under which DOE "will make available nuclear waste disposal services to owners and generators" of SNF and/or HLW. 10 C.F.R. § 961.1. Under the Standard Contract, DOE agreed to dispose of an owner's SNF and/or HLW by no later than January 31, 1998, in exchange for the owner's payment of fees into the Nuclear Waste Fund. See 42 U.S.C. § 10222(a)(5)(A), (B) & (c).

Having executed its Standard Contract with DOE on or about June 27, 1983, plaintiff alleges that it paid more than $84 million into the Nuclear Waste Fund as of 2002 and "continues to pay between $8 and $9 million per year." Compl. filed Aug. 2, 2002, ¶ 9. DOE, for its part, did not begin to dispose of plaintiff's nuclear by-product by January 31, 1998; in fact, DOE has made no effort to gather any SNF or HLW, the disposal of which it is contractually obligated to perform. DOE has estimated that it will not begin to eliminate the SNF and HLW until 2010, at the earliest. Because of this failure to dispose of plaintiff's nuclear material, plaintiff alleges that it "has been and will be forced to incur substantial additional costs to provide for extended on-site storage of its SNF." Compl. ¶ 21.

### DISCUSSION

Plaintiff's complaint is one of 21 cases filed in the United States Court of Federal Claims

involving the disposal of SNF and/or HLW under the Standard Contract. On April 16, 2003, the Chief Judge stayed most of these actions pending decisions on motions relating to specific claims in six specified "lead" or "accelerated" cases. This court was advised to proceed to resolve defendant's motion to dismiss, which is ready for decision. Defendant represents that it has filed dispositive motions targeting the takings allegations in 16 of the cases involving the Standard Contract. *See* Joint Status Rpt., filed Apr. 4, 2003, at 39.

The complaint presents two takings theories: 1) The Government's failure to comply with the January 31, 1998 deadline in the Standard Contract constitutes a taking of plaintiff's vested contract rights; and 2) the Government's failure to remove plaintiff's SNF and HLW has forced plaintiff to house the substances on its real property, thereby depriving plaintiff of the full economic value of that property. *See* Compl. ¶¶ 33–34.

Plaintiff has withdrawn the first formulation of its takings theory in light of the Federal Circuit's decision in *Castle v. United States,* 301 F.3d 1328 (Fed.Cir.2002), *petition for cert. filed,* 71 U.S.L.W. 3430 (U.S. Dec. 16, 2002) (No. 02–938). *See* Pl.'s Br. filed Dec. 10, 2002, at 1 n. 1. In *Castle* the appeals court affirmed a ruling that the passage of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"), did not take plaintiff shareholders' contractual rights in violation of the Fifth Amendment. *See* 301 F.3d at 1341–42. Noting that plaintiffs received no contractual guarantee that the Government would refrain from regulating the thrift acquired by plaintiffs, the Federal Circuit concluded that the enactment of FIRREA did not deprive plaintiffs from prosecuting "the full range of remedies associated with any contractual property right they possessed." *Id.* at 1342. Thus, even assuming that the passage of FIRREA breached the contract that plaintiffs alleged they held with the Government, the statute did not take plaintiffs' rights to sue under that contract.

Responding to the second iteration of plaintiff's takings theory, defendant advances numerous arguments that it contends warrant dismissal. The thrust of these arguments is that plaintiff's takings theory is a disguised breach-of-contract claim. Defendant notes that, absent the Standard Contract, DOE would have "absolutely no obligation to accept or dispose of [plaintiff's] SNF or HLW." Def.'s Br. filed Jan. 30, 2003, at 7. According to defendant, plaintiff premises its takings claim on the effects of the Government's breach of the Standard Contract, yet also advocates a constitutional basis for recovery. Based on the decisions of the Federal Circuit, defendant maintains that plaintiff's remedy for DOE's failure to honor its obligations lies exclusively in contract.

Plaintiff points to the Supreme Court's recent admonition that the purpose of the takings clause "is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Palazzolo v. Rhode Island,* 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (quoting *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). The Federal Circuit in *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336 (Fed.Cir.2000), allowed plaintiff utilities, on facts identical to the case at hand, to maintain both a contract and a takings claim. Plaintiff therefore draws on this case as binding precedent. Plaintiff further cites case law which, it argues, stands for the proposition that a breach-of-contract cause of action does not automatically foreclose a takings claim.

A takings claim has limited application when a claimant has a viable breach remedy. *Castle,* 301 F.3d at 1342; *Pi Elecs. Corp. v. United States,* 55 Fed.Cl. 279, 285–86 (2003).[1] This is so because "[v]irtually *every* contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance. The duty to keep a contract at common law means a prediction that you must pay dam-

---

1. The court's analysis draws heavily on *Pi Electronics,* an opinion issued by this court two months ago.

ages if you do not keep it,—and nothing else." *United States v. Winstar Corp.,* 518 U.S. 839, 919, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (Scalia, J., concurring) (internal quotation marks and citation omitted).

This legal axiom, however, applies when " 'the relative rights of party litigants ... have been voluntarily created by contract. In such instances interference with such contractual rights generally gives rise to a breach claim not a taking[s] claim.' " *Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1070 (Fed.Cir. 2001) (quoting *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978)); *see also Baggett Transp. Co. v. United States,* 969 F.2d 1028, 1034 (Fed.Cir.1992). If the right at issue is not governed by the terms of the parties' contract, plaintiff may pursue a takings remedy to vindicate that right. For example, in *Prudential Insurance Co. v. United States,* 801 F.2d 1295, 1300 n. 13 (Fed.Cir.1986), the Federal Circuit allowed that plaintiff, in an action against the Government for breaching a lease, possibly could recover under a takings theory. However, resort to the takings clause "was warranted by the fact that the landowner had rights in the property separate and distinct from any rights conferred by contract." *Castle v. United States,* 48 Fed.Cl. 187, 218–19 (2000), *aff'd in relevant part, rev'd in part, and vacated and remanded in part,* 301 F.3d at 1343. The Court of Federal Claims has recognized that vindication of rights existing independently of the contract at issue cannot be restricted to contractual remedies. *See Scan–Tech Sec., L.P. v. United States,* 46 Fed.Cl. 326, 342 (2000) (refusing to preclude takings remedy because court could not discern what rights contract created); *Integrated Logistics Support Sys. Int'l, Inc. v. United States,* 42 Fed.Cl. 30, 34–35 (1998) (refusing to dismiss takings claim when court could not conclude whether contract conferred rights at issue).

The Federal Circuit's decision in *Maine Yankee,* 225 F.3d 1336, comports with this framework. In a case brought by three utility plaintiffs under the Standard Contract, the Federal Circuit affirmed the denial of defendant's motion to dismiss claims for breach of contract and breach of the implied duty of good faith and fair dealing, as well as a takings claim. *See* 225 F.3d at 1342–43. Defendant argued that plaintiffs' failure to pursue administrative remedies under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2003), barred their claims. The appeals court disagreed because plaintiffs contended "that the government breached a critical and central obligation of the [Standard Contract]—that it begin disposal of nuclear waste by January 1, 1998." 225 F.3d at 1341–42. This allegation exceeded the scope of the avoidable delays provision of the Standard Contract, and the "narrow specified relief available under [that] ... provision would fall far short of the relief necessary adequately to compensate [plaintiffs] for the damages" suffered as a result of the alleged breach of contract. *Id.* at 1342.

The decision to allow plaintiffs to maintain their breach claim required affirming the trial court's denial of the motion to dismiss plaintiffs' takings claim. Because the takings claim could not "be viewed as constituting avoidable delay[ ] under that clause," plaintiffs' takings theory exceeded the scope of the Standard Contract's avoidable delays provision. 225 F.3d at 1342. In fact, the appeals court noted that defendant's objection to plaintiffs' takings theory was that plaintiffs had " 'renamed their contract claim,' " the same argument presented by defendant in the case at hand. *Id.* at 1342–43.

Defendant notes, correctly, that *Maine Yankee* arose in the context of a jurisdictional challenge, not a motion to dismiss for failure to state a claim. This court has reviewed the briefing on defendant's other dispositive motions in this case. These motions bespeak a reluctance to deal with plaintiff's claim as redressable under the Standard Contract. This court will not make an early ruling that could prevent plaintiff from vindicating its rights—whether under the Standard Contract or takings jurisprudence, assuming, as defendant resists, that plaintiff has rights that are due to be vindicated. The rationale of *Maine Yankee* also militates against dismissing plaintiff's takings claim at this point in the litigation. A more fully

developed record will allow the court to assess whether the property right implicated in plaintiff's takings claim falls outside the rights granted under the Standard Contract.

However, the court views plaintiff's takings theory as an alternative to its contract claim, *see Sinclair v. United States,* 49 Fed.Cl. 274, 280 n. 7 (2001), and not as a mechanism by which plaintiff may obtain remedies unavailable to it under the Standard Contract. While plaintiff ostensibly agrees with this proposition, *see* Pl.'s Br. filed Dec. 10, 2002, at 14, its brief foreshadows a potential tactic to receive "prejudgment interest" and "certain consequential damages on its takings claim, which damages are generally unavailable as a remedy for breach of contract," *id.* at 15. If plaintiff succeeds on its breach claim, the court will award only the damages contemplated by the Standard Contract and will not permit plaintiff to pursue a takings remedy in order to circumvent the limitations inherent in its contractual relationship with the Government.[2] *See Granite Mgmt. Corp. v. United States,* 55 Fed.Cl. 164, 165–66 (2003) (rejecting plaintiff's contention that lack of recovery of prejudgment interest under contract requires preserving takings claim from dismissal); *Home Sav. of Am., FSB v. United States,* 51 Fed.Cl. 487, 495–96 (2002) (lack of a " 'complete' contract remedy . . . does not give life to a takings theory"); *Castle,* 48 Fed.Cl. at 219–20 (rejecting plaintiff's contention that failure to award prejudgment interest or lost profits under contract constitutes taking).

## CONCLUSION

"The purpose of [RCFC 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys.,* 988 F.2d 1157, 1160 (Fed.Cir.1993). Plaintiff's takings theory is not "fatally flawed," assuming that plaintiff cannot recover under the Standard Contract. Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is granted only insofar as it relates to plaintiff's claim that its vested contract rights were taken. Defendant's motion to dismiss is otherwise denied, without prejudice.

2. This case remains stayed pursuant to the Chief Judge's order of April 16, 2003, and this court's order of April 17, 2003.

---

2. In any event, plaintiff's claim for consequential damages based on a taking is fanciful and should not be revived if this action proceeds on a takings theory.