**NIAGARA MOHAWK POWER CORPO-RATION, New York State Electric & Gas Corporation, Rochester Gas & Electric Corporation, and Central Hudson Gas & Electric Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Niagara Mohawk Power Corporation, Plaintiff,**

v.

**The United States, Defendant.**

Nos. 04–125C, 04–124C.

United States Court of Federal Claims.

April 7, 2011.

As Corrected April 22, 2011.

Ed R. Haden, with whom were M. Stanford Blanton, and K.C. Hairston, Balch & Bingham, LLP, Birmingham, Alabama, for plaintiffs.

Eric P. Bruskin, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director, United States Department of Justice, Commercial Litigation Branch, Washington, DC, and Jane K. Taylor, United States Department of Energy, Washington, DC, of counsel, for defendant.

## *OPINION*

MARGOLIS, Senior Judge.

This matter comes before the Court on defendant United States' motions to dismiss, filed September 23, 2010 in the above-captioned cases. Oral argument was held in Court on March 9, 2011. Plaintiffs Niagara Mohawk Power Corporation, New York State Electric & Gas Corporation, Rochester Gas & Electric Corporation, and Central Hudson Gas & Electric Corporation, allege that defendant violated the Takings Clause of the Fifth Amendment of the United States Constitution when the Department of Energy ("DOE") failed to dispose of plaintiffs' spent nuclear fuel ("SNF") and/or high-level radioactive waste as required by the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101, *et seq.* ("NWPA"). Because plaintiffs have failed to state claims for relief, plaintiffs' complaints are dismissed pursuant to RCFC 12(b)(6).

## I. BACKGROUND

### A. The Nuclear Waste Policy Act

The NWPA authorizes the DOE to "enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel ... for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1). These contracts state that persons who generate SNF "shall provide ... payment to the [DOE] of fees ... sufficient to offset [the DOE's] expenditures." *Id.* "In return for the payment of [those] fees, [the DOE], beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel...." 42 U.S.C. § 10222(a)(5)(B). The NWPA requires that the Nuclear Regulatory Commission "shall not issue or renew a license to any person to use a [nuclear power plant] ... unless ... such person has entered into a contract with the [DOE] under this section." [1] 42 U.S.C. § 10222(b)(1)(A)(i).

### B. Nine Mile Point Nuclear Power Plant

Plaintiffs are the former owners of Nine Mile Point Nuclear Power Plant Units 1 and 2 (collectively, "the plant"), located in Oswego County, New York. Unit 1 of the plant is owned and operated solely by Niagara Pow-

---

1. The Standard Contract for Disposal of Spent Nuclear Fuel and/or High–Level Radioactive Waste is codified at 10 C.F.R. § 961.11.

er; Unit 2 is owned jointly by Niagara Power, New York State Electric & Gas, Rochester Gas & Electric, and Central Hudson Gas & Electric, and operated by Niagara Power. Pursuant to the NWPA, plaintiffs entered into contracts ("the contracts") with the DOE for disposal of their SNF—in June 1983 for Unit 1 and August 1985 for Unit 2. Consistent with the terms of the contracts, plaintiffs paid fees to the DOE. The DOE, however, failed to dispose of plaintiffs' SNF and announced that it would be unable to commence disposal of SNF until 2010 at the earliest. According to plaintiffs, the DOE's failure to dispose of the SNF forced them to incur costs associated with "the eventual need to construct and then operate for an indefinite period costly on-site storage facilities" for SNF. Plaintiffs also allege that on-site storage of SNF "diminished the market value of [the plant] which caused Plaintiffs to realize significantly less value as a result of the sale of their ownership interests in [the plant]."

## C. The Complaint

Plaintiffs filed complaints against defendant, in each of the above-captioned cases, alleging takings without just compensation under the Fifth Amendment of the United States Constitution.[2] Liberally construed, the complaints allege that the DOE's failure to dispose of SNF was: (1) a taking of plaintiffs' right to have the DOE dispose of their SNF; (2) a physical taking of plaintiffs' real property, which was used for on-site storage of the SNF; (3) a regulatory taking of (a) plaintiffs' real property and (b) the going-concern value of the plant; and (4) a taking of the fees paid by plaintiffs under the NWPA.

## II. STANDARD FOR DISMISSAL

RCFC 12(b)(6) provides that a complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." RCFC 12(b)(6). When reviewing a motion to dismiss, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor

of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir. 2001) (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

## III. ANALYSIS

### A. Taking of Plaintiffs' Right to Have the DOE Dispose of SNF

Defendant argues that "[p]laintiffs' takings claim[s] . . . should be dismissed because DOE's actions constituted a breach of contractual obligations, not a Fifth Amendment taking." (Mot. at 5.) Plaintiffs argue that the existence of potential breach of contract claims does not preclude its takings claims because "the property rights [at issue] were not created by the Standard Contract[s]." ('125 Resp. at 18.)

■ It is well-settled that "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) (quoting *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct.Cl.1978)). If the property rights alleged to have been taken "arise from and were created by the bilateral contracts that plaintiffs entered into with the Government, plaintiffs' remedies lie in breach of contract claims." *Tamerlane, Ltd. v. United States*, 80 Fed.Cl. 724, 738 (2008); *Westfed Holdings, Inc. v. United States*, 52 Fed.Cl. 135, 152 (2002). If, on the other hand, the property rights allegedly taken "exist independently of [plaintiffs'] contracts with the Government," then a takings claim will lie. *Tamerlane*, 80 Fed.Cl. at 738; *Westfed Holdings*, 52 Fed.Cl. at 152.

■ To the extent plaintiffs' takings claims are based on their right to have the DOE dispose of SNF, plaintiffs have failed to state claims for relief. Plaintiffs' right to have the DOE dispose of SNF clearly arises

---

**2.** The No. 04–124 case arises from the alleged taking of rights associated with Unit 1; the No. 04–125 case arises from the alleged taking of rights associated with Unit 2. The two cases are otherwise identical for purposes of the motions to dismiss.

from and was created by the contracts. *See* 42 U.S.C. § 10222; 10 C.F.R. § 961.11. Absent the contracts, the DOE would have no obligation to dispose of plaintiffs' SNF. *See* 42 U.S.C. § 10131; Denise Renee Foster, *Utilities: De Facto Repositories for High–Level Radioactive Waste?*, 5 DICKINSON J. OF ENVTL. L. & POL'Y 375, 376 (Summer 1996) (citing S.Rep. No. 282, 97th Cong., 1st Sess. 3–7 (1981)). Plaintiffs' proper remedies therefore lie in breach of contract claims, not takings claims. *See Consumers Energy Co. v. United States*, 84 Fed.Cl. 152, 155–56 (2008) (dismissing takings claim because plaintiff's right to disposal of SNF arises from contract); *System Fuels, Inc. v. United States*, 78 Fed.Cl. 769, 809 (2007) (same), *recons. granted on other grounds*, 92 Fed.Cl. 101 (2010); *Northern States Power Co. v. United States*, 78 Fed.Cl. 449, 472 (2007) (same); *Pacific Gas & Electric Co. v. United States*, 70 Fed.Cl. 766, 777–79 (2006) (same).

Plaintiffs argue that they should still be allowed to press their takings claims because the contracts were involuntary. Here, however, plaintiffs' execution of the contracts was voluntary. Although plaintiffs are correct that the contracts were mandatory for anyone seeking to continue operating a nuclear power plant, plaintiffs could have left the nuclear power business or simply avoided entering into the business in the first place. Thus, plaintiffs' decision to execute the contracts and continue operating the plant was a voluntary one. *Cf. St. Christopher Associates, L.P. v. United States*, 75 Fed.Cl. 1, 14 (2006) (holding that contract with Government was voluntary where plaintiff "made a business decision" to enter into HUD development market), *aff'd*, 511 F.3d 1376 (Fed. Cir.2008).

Plaintiffs also complain that "the full range of contract remedies [for breach of contract is] not available" because they are precluded from claiming total breach or seeking prejudgment interest.[3] But "the lack of a 'complete' contract remedy, either because it would not include interest or because the contract theory does not yield a recovery, does not give life to a takings theory." *Home Savings of America, F.S.B. v. United States*, 51 Fed.Cl. 487, 495–96 (2002); *see also Granite Management Corp. v. United States*, 55 Fed.Cl. 164, 166 (2003) (holding that unavailability of prejudgment interest on breach of contract claim does not give rise to a takings claim). Thus, plaintiffs' inability to recover damages for total breach or prejudgment interest does not transform their potential breach of contract claims into takings claims.

Plaintiffs' takings claims are therefore denied to the extent they are based on plaintiffs' right to have the DOE dispose of SNF.[4]

## B. Physical Taking of Plaintiffs' Real Property

Plaintiffs argue that the DOE's failure to dispose of SNF effected a physical taking of their real property because "the Government's failure to accept [the plant's] spent nuclear fuel was akin to a confiscation of the portion of the plant that now must be used for interim spent nuclear fuel storage." ('125 Resp. at 10.) Defendant argues that

---

3. Plaintiffs are precluded from claiming total breach because the NWPA prevents plaintiffs from rescinding the contract and disposing of their SNF other than through the DOE. *See Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed.Cir.2005). Plaintiffs are precluded from seeking prejudgment interest on their potential breach of contract claims because there is no waiver of sovereign immunity with respect to prejudgment interest on claims under the NWPA. *See* 28 U.S.C. § 2516 (precluding award of prejudgment interest against government absent express waiver of sovereign immunity); 42 U.S.C. § 10222 (no provision for prejudgment interest in case of breach); 10 C.F.R. § 961.11 (same).

4. A number of judges in other SNF cases have declined to dismiss takings claims similar to the ones here pending development of a "more complete record." *See Consolidated Edison Co. of New York v. United States*, 67 Fed.Cl. 285, 291–92 (2005); *System Fuels, Inc. v. United States*, 65 Fed.Cl. 163, 172–73 (2005); *Boston Edison Co. v. United States*, 64 Fed.Cl. 167, 187–88 (2005); *Omaha Public Power Dist. v. United States*, 69 Fed.Cl. 237, 242–43 (2005); *Sacramento Municipal Utility Dist. v. United States*, 61 Fed.Cl. 438, 441–43 (2004); *Detroit Edison Co. v. United States*, 56 Fed.Cl. 299, 302–03 (2003). In this case, however, plaintiffs' allegations are sufficiently specific that the Court need not wait for development of a factual record before disposing of the claims.

there was no physical taking because plaintiffs were merely "required to reserve their real property for extended storage of their *own* SNF...." (Mot. at 18–19 (emphasis in original).)

■ "A physical taking is the 'paradigmatic taking' and occurs by 'a direct government appropriation or [a] physical invasion of private property.'" *Casitas Municipal Water Dist. v. United States*, 543 F.3d 1276, 1288 (Fed.Cir.2008) (quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)). "The jurisprudence pertaining to physical takings 'involves the straightforward application of per se rules.'" *Id.* (quoting *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 233, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003)).

■ Plaintiffs' physical takings claims fail as a matter of law. It is undisputed that title to the SNF has not yet passed to the DOE. *See* 42 U.S.C. § 10222(a)(5)(A) (providing that title to SNF shall not pass from plaintiff to Government until repository is complete). Thus, plaintiffs were not forced to store the Government's property, but rather their own. The Court declines to extend the straightforward doctrine of physical takings to include the legal theory urged by plaintiffs.[5] Accordingly, plaintiffs' physical takings claims must be denied.[6] *See Canal Electric v. United States*, 65 Fed.Cl. 650, 654 (2005) (dismissing physical takings claim in SNF case because "[d]efendant does not own the nuclear waste that created the physical taking of its property that plaintiff complains of.").

## C.  Regulatory Takings of Plaintiffs' Real Property and Going–Concern Value of the Plant

Defendant argues that the regulatory taking claims must be denied because plaintiffs have not identified any governmental regulation that allegedly took their real property or the going-concern value of the plant.

■ "The government action upon which the takings claim is premised must be authorized, either expressly or by necessary implication, by some valid enactment of Congress." *Short v. United States*, 50 F.3d 994, 1000–01 (Fed.Cir.1995) (affirming dismissal of takings claim where defendant failed to distribute monies consistent with statutory payment scheme); *see also Dureiko v. United States*, 209 F.3d 1345, 1359–60 (Fed.Cir. 2000) (affirming dismissal of takings claim based on defendant's breach of contract claims).

■ In this case, plaintiffs do not complain that the NWPA effected a regulatory taking of their real property or going-concern value; to the contrary, plaintiffs wanted the DOE to dispose of their SNF as required by the NWPA. *See* 42 U.S.C. § 10222(a)(5)(B). Instead, plaintiffs claim that a regulatory taking was effected by the DOE's failure to dispose of plaintiffs' SNF. Thus, plaintiffs' regulatory takings claims are not predicated on an action of the DOE taken pursuant to an enactment of Congress, but rather on the DOE's failure to act pursuant to the NWPA, as Congress required. Plaintiffs have therefore failed to state a claim for regulatory takings.

---

5.  Courts have typically only found physical takings in straightforward cases involving the invasion of plaintiffs' real property by the government's (or a government-sanctioned third party's) personnel or property. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 438, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (finding cable installation on plaintiff's property to be a taking); *McKay v. United States*, 199 F.3d 1376, 1381–82 (Fed.Cir.1999) (finding groundwater monitoring wells built on plaintiff's property to be a taking); *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1582–83 (Fed.Cir.1993) (finding actions of naval personnel in breaking into and occupying plaintiff's warehouse to be a taking). By contrast, courts have typically rejected attempts by plaintiffs to extend the physical takings doctrine be-

yond this narrow scope. *See, e.g., Norman v. United States*, 429 F.3d 1081, 1088–90 (Fed.Cir. 2005) (rejecting takings claim based on plaintiff's voluntary transfer of land to third-party); *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed.Cir.2005) (holding that restriction on surface mining rights is not a physical taking); *Seiber v. United States*, 364 F.3d 1356, 1366–67 (Fed.Cir.2004) (holding that regulations designed to protect spotted owls are not a physical taking).

6.  *But see Omaha Public Power Dist.*, 69 Fed.Cl. at 242–43 (alleging facts sufficient to state a physical takings claim in SNF case); *Sacramento Municipal Utility Dist.*, 61 Fed.Cl. at 442–43 (same).

**318**

### D. Taking of Fees Paid Under the NWPA

Plaintiffs claim that the DOE's default on its statutory obligations was a taking of plaintiffs' waste disposal fees. Defendant correctly notes, however, that the fees required under the NWPA have already been upheld as constitutional because "the mere imposition of an obligation to pay money does not constitute an unconstitutional taking of property." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339–40 (Fed. Cir.2001) (affirming dismissal of takings claim relating to NWPA fees); *see also Canal Electric*, 65 Fed.Cl. at 655 (rejecting takings claim based on fees under NWPA). Accordingly, plaintiffs' takings claims based on the payment of fees under the NWPA are without merit.

### IV. Conclusion

For the foregoing reasons, defendant's motions to dismiss are granted. The Clerk shall dismiss the complaints and enter judgment for the defendant. No costs.